790 So.2d 648 (2001)
STATE of Louisiana
v.
James HIGGINBOTHAM.
No. 00-KA-1782.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 2001.
Juan C. Labadie, Gretna, LA, for defendant-appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, George Wallace, Alison Wallis, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, LA, for plaintiff-appellee.
*649 Court composed of Judges SUSAN M. CHEHARDY, PATRICK M. SCHOTT, Pro Tempore, and JAMES C. GULOTTA, Pro Tempore.
PATRICK M. SCHOTT, Judge, Pro Tempore.
After a bench trial, defendant was convicted of placing threatening telephone calls (LSA-R.S.14:285) and stalking (LSA.R.S.14:40.2). On the stalking conviction, he was sentenced to one year in the parish prison with the second six months suspended with active probation, and on the telephone conviction, he was sentenced to six months in the parish prison to run concurrently with the other sentence. He has appealed attacking the credibility of the prosecution witnesses and arguing insufficiency of the evidence to support the convictions. We note that the telephone conviction is not appealable since it is not triable by jury while the stalking conviction is. LSA-C.Cr.P. arts. 779, 912.1(B). However, since the two charges were separate counts in the same bill of information and they were tried together as a single case, both convictions are properly before this Court.
The victim, Joy Spencer, testified as follows: For four years before the incidents that led to defendant's arrest and convictions, he lived with her and her daughter, Melva Spencer, and was her daughter's boyfriend. They started having trouble with defendant in September 1998 when he became violent and they called the police. Between April 1999 and May 1999, immediately after he moved out of the residence, he called her several times every day, day and night, cursing her when she answered the telephone. The phone calls were so frequent that she sometimes took the handset off the receiver so his calls would not go through to her. During one phone call, he specifically threatened to kill her, and during another, he threatened to "f* * * [her] in the rectum `till [she] died.'"
Joy Spencer further testified that defendant appeared near her home several times, and, on one such occasion, he stood on the street corner near her home, staring at her, making an obscene gesture at her with his fingers or shaking his fist at her. On another occasion, he passed her house in his truck and shook his fist at her and made an obscene gesture at her with his finger.
She testified that she felt physically threatened by the defendant's phone calls and his appearances near her home and she experienced three panic attacks. She ultimately obtained a restraining order against the defendant, but he told her, "it didn't do any good ... and where he'd shove it!"
Called as a defense witness, Joy Spencer's daughter, Melva, admitted that her mother received threatening calls from the defendant and that defendant could be violent. She also admitted that she told police she feared for her own life, but she continued to see him after he moved out of her mother's home and even signed a lease for an apartment and lived with him there for several months.
By his first assignment of error, defendant argues that Joy Spencer's testimony was ambiguous and incredible. It is not the function of the court of appeal to evaluate the credibility of witnesses, but it is for the trial court to accept or reject, in whole or in part, the testimony of any witness. State v. Hopson, 98-943 (La.App. 5 Cir. 3/30/99), 735 So.2d 81, 85, writ denied, 99-1315 (La.11/12/99), 749 So.2d 650. Similarly, by his second assignment, defendant argues that the trial court erred by accepting Melva Spencer's testimony because her credibility was destroyed when she was impeached several times during *650 her testimony. She was a defense witness, and the record does not show that she was impeached. Furthermore, again, it is not the function of an appellate court to reassess the credibility of witnesses. These assignments are meritless.
By his third assignment, defendant argues the evidence was insufficient to convict him of stalking and placing harassing phone calls. In reviewing a claim for sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
He also argues that the evidence of his standing near the victim's home and passing her home in his truck do not establish a following and that his alleged activities were constitutionally protected and, therefore, cannot be construed as harassing for purposes of the stalking statute.
Stalking is "the willful, malicious, and repeated following or harassing of another person with the intent to place that person in fear of death or bodily injury." LSA-R.S. 14:40.2(A). The stalking statute defines "harassing" as
engaging in a knowing and willful pattern of conduct directed at a specific person which seriously alarms, annoys, or distresses the person, and which serves no legitimate purpose. The conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial emotional distress to the person.
The statute defines "pattern of conduct" as:
a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person.
LSA-R.S. 14:40.2(C)(2).
There is no evidence that defendant followed the victim so the question is whether the evidence is sufficient to prove harassing. Although the victim testified that she saw defendant near her home on several occasions, she was not clear as to the number of times between April and May 1999, except for the two incidents when he menaced her once from the corner and once from his truck. Standing alone, these incidents may arguably be insufficient to support a conviction of harassing as contemplated by the stalking statute, but this is not all of the evidence.
The victim testified defendant called her several times a day at all hours of the day and night between April 1999 and May 1999, and he cursed her whenever she answered the phone. On one occasion, he told her, "I'm going to kill you yet," and, on another occasion, he threatened to "f* * * [her] in the rectum until [she] died." Her daughter admitted she was aware her mother received threatening phone calls from defendant. This evidence, along with the other two incidents, clearly demonstrate that defendant harassed the victim by engaging in a series of acts over a period of time that evidenced an intent to inflict a continuity of emotional distress upon her and which were directed at the victim and alarmed, annoyed or distressed her, and served no legitimate purpose. And, the evidence proves that the harassing was willful, malicious, and repeated and that he intended to place the victim in fear of death or bodily injury. Accordingly, the evidence, as a whole, was clearly sufficient to find defendant guilty of stalking.
This evidence was also sufficient to convict defendant of making threatening *651 telephone calls in violation of LSA-R.S. 14:285(A), which, in pertinent part, provides:
No person shall:
(1) Engage in or institute a telephone call, telephone conversation, or telephone conference, with another person, anonymously or otherwise, and therein use obscene, profane, vulgar, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass another person.
(2) Make repeated telephone communications anonymously or otherwise in a manner reasonably expected to annoy, abuse, torment, harass, embarrass, or offend another, whether or not conversation ensues.
However, we note that an affirmation of both convictions, and using the threatening phone calls to prove stalking, would place defendant in double jeopardy because the evidence required to support the conviction of stalking would also be used to support the conviction of placing threatening phone calls. To correct such a violation of double jeopardy, a reviewing court vacates the conviction and sentence of the less severely punishable offense and affirms the conviction and sentence of more severely punishable offense. State v. Rhodes, 95-54 (La.App. 5 Cir. 6/28/95), 657 So.2d 1373. Because stalking is the more severely punishable offense, we reverse defendant's conviction and sentence under LSA-R.S. 14:285 of placing threatening phone calls.
A review of the record for errors patent, in accordance with LSA-C.Cr.P. art. 920 has revealed none other that the aforementioned.
Accordingly, we affirm defendant's conviction and sentence, under LSA-R.S. 14:40.2, for stalking, and reverse defendant's conviction and sentence, under LSA-R.S. 14:285, for placing threatening phone calls.
AFFIRMED IN PART; REVERSED IN PART.