# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-504

**STATE OF LOUISIANA**

**VERSUS**

**TIMOTHY J. RYAN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 69903
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

**COOKS, J., DISSENTS AND WOULD AFFIRM THE DEFENDANT'S CONVICTION AND SENTENCE.**

> **CONVICTION REVERSED; SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED.**

**Honorable William E. Tilley**
**District Attorney - Thirtieth Judicial District Court**
**P. O. Box 1188**
**Leesville, LA 71446**
**Telephone: (337) 239-2008**
**COUNSEL FOR:**
> **Plaintiff/Appellee - State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**P. O. Box 719**
**Rayville, LA 71269**
**Telephone: (318) 728-2043**
**COUNSEL FOR:**
> **Defendant/Appellant - Timothy J. Ryan**

**THIBODEAUX, Chief Judge.**

The Defendant, Timothy J. Ryan, was convicted of stalking, a violation of La.R.S. 14:40.2, and appeals on the basis of insufficiency of the evidence. Because we agree that the evidence was legally insufficient to support a verdict of guilty, we reverse and enter a judgment of acquittal.

## FACTS

The Defendant parked his vehicle in front of the residence of Christopher and Amanda Wright for approximately two minutes. Mr. Wright is a state trooper. The Defendant then left, turned around in a nearby driveway, and drove back, again passing in front of the Wrights' residence. After reaching an apartment complex one-half mile from the residence, he turned around and again drove past the Wrights' residence, while staring at Mrs. Wright. This same sequence occurred several times during a single day.

The Defendant and the Wrights did not know each other. Mrs. Wright testified that she became frightened by the Defendant's behavior.

The Defendant testified that he had been driving down that particular road because he had been looking for a state trooper and because he was picking up firewood left by a tree cutting crew in the area. Defendant slowed down and stopped for a minute to look when he saw a state trooper's vehicle parked in the driveway. Defendant recalled that a male came outside, but the man did not look like Trooper Wright, the husband of the alleged victim.

Defendant had read an article in the *Alexandria Town Talk* about a state trooper named Johnny Parker who had been involved in an incident at Beauregard Hospital, and Defendant wanted to see what Trooper Parker looked like. When he saw Trooper Wright, Defendant saluted him because he thought that state troopers

saluted each other. Defendant did not recall how many times he drove by the Wright residence at midday, but agreed that it was several times. After driving by during the noon hour, Defendant returned twice to see if the tree cutting crew had finished its trimming.

## LAW AND DISCUSSION

### Sufficiency of the Evidence

Defendant asserts that "[t]here was insufficient evidence to convict Defendant of stalking." Defendant argues that there is no evidence to support a finding that he intentionally acted in a malicious manner, that he repeatedly followed or harassed Mrs. Wright, or that he acted with the intent to cause Mrs. Wright to feel alarmed or emotional distress.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27. Thus, "[i]t is not the function of an appellate court to assess credibility or reweigh the evidence." *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443.

At the time of the offense, the statute prohibiting stalking read, in pertinent part, as follows:

2

A.     Stalking is the willful, malicious, and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress.  Stalking shall include but not be limited to the willful, malicious, and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnaping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

. . . .

C.     For the purposes of this Section, the following words shall have the following meanings:

(1)     "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.

(2)     "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person.  Constitutionally protected activity is not included within the meaning of pattern of conduct.

La.R.S. 14:40.2.

The trial court found Defendant to be guilty of stalking and issued oral reasons for its ruling:

All right.  Well, when I look at the statute[,] stalking is the intentional and repeated following, harassing of another person that would cause a reasonable person to feel alarmed or suffer emotional distress.  Alarmed is what I'm looking at and emotional distress.  Then when I look over, as Mr. Anderson pointed out, about a pattern of conduct means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person.  So, what I have to find is that his driving up and down that road constitutes a pattern of conduct evidencing his intent to inflict a continuity of emotional distress upon the person of the victims.  Now, when I consider all the facts[,] I do believe that there was emotional distress on the part of the victims and that's

reasonable to understand because, as I've stated before, the suspicious conduct in a neighborhood causes a certain amount of - - degree of emotional distress especially with the womenfolk. Mr. Ryan's explanation of what he was doing there is pretty flimsy as far as the looking for this officer that he didn't know what he looked like [sic] the reasons he stopped there. I don't know if I buy that or not. He may have been over there looking for firewood according to him, but I have to find that his pattern of conduct was designed by him, was intended by him, to cause emotional distress on the victims, on the Wrights. There's no prior contact whatsoever between these people; nobody knew one another here. It's difficult for the Court to find a motive for him to be intending that his conduct should cause emotional distress, at least the point where he stopped at the - - in front of the residence. Thereafter as the conduct continued, this slow driving back and forth in front of the residence, that may be quite another thing. At some point it could be - - this conduct could be construed or evidence of his intent to inflict a continuity of emotional distress upon these people, especially after he had seen them come out of the house and standing [sic] there looking at him and all that and so forth.

The Court therefore finds this defendant guilty of that offense under that provision and under those circumstances.

In *State v. Higginbotham*, 00-1782 (La.App. 5 Cir. 5/16/01), 790 So.2d 648, *writ denied*, 01-1756 (La. 5/3/02), 815 So.2d 95, the fifth circuit examined the sufficiency of the evidence introduced to support a stalking conviction. In his appeal, the defendant asserted that the evidence of his standing near the victim's home and passing her home in his truck did not establish "following" and that his activities did not constitute "harassing" because they were constitutionally protected. The fifth circuit agreed that there had been no evidence submitted to fulfill the "following" element of the stalking statute. *Id*. However, the fifth circuit concluded that the defendant's actions had been "harassing" as contemplated by the statute.

Higginbotham's victim had seen him near her home on several occasions. During two of the incidents, Higginbotham had menaced her. The

defendant also called the victim's house several times a day at all hours. During two of the calls, the defendant had threatened to kill the victim, and one of the death threats included sexual violence. The fifth circuit held that the collective incidents clearly demonstrated that the defendant had willfully, maliciously, and repeatedly harassed the victim over a period of time with the intent to inflict a continuity of emotional distress upon the victim including the fear of death or bodily injury. Accordingly, the fifth circuit found sufficient evidence to support Higginbotham's stalking conviction.

In *State v. Rico*, 99-158 (La.App. 3 Cir. 6/2/99), 741 So.2d 774, *writ denied*, 99-1883 (La. 12/10/99) 751 So.2d 244, this court found insufficient evidence to support the defendant's stalking conviction. This court concluded that the defendant's actions of "following" someone while that person drove to a series of three different locations constituted one "following" instead of the repeated "followings" required under the stalking statute. This court further found that the defendant had not verbally threatened the person he had been "following." Additionally, this court held that the defendant's actions did not constitute a physical threat. Rico did not verbally threaten the victim. Although he followed closely, he did not stop when the person he was following exited her car and went inside her house; he passed the person's home and turned around; the defendant did not use his vehicle to ram or hit the person's automobile; and, the defendant did not follow as the other car drove behind a building but waited for the vehicle to emerge from behind the building. This court determined that stalking is a specific intent crime and these actions did not evidence the requisite specific intent.

In *State v. Young*, 96-2079 (La.App. 1 Cir. 5/1/98), 712 So.2d 273, *writ denied*, 98-1598 (La. 2/5/99), 737 So.2d 740, the first circuit reversed a defendant's

stalking conviction. Young had been convicted of stalking a judge who had ruled against him in civil proceedings. The defendant, who was a *pro se* litigant, had made several calls to the judge's staff in the attempt to either speak to the judge or obtain a status conference. Young had been present at the courthouse or in the judge's courtroom on a number of occasions when the defendant's case was not docketed. During those times, Young reportedly stared disdainfully at the judge. The defendant had also called the judge's former secretary. The judge had seen a parked car with an unidentified occupant parked near his home. Finally, as the judge returned to work after seeing the car parked near his residence, he saw Young exit an alleyway near the courthouse and stare at him.

The *Young* court concluded that any rational trier of fact would have had reasonable doubt that the defendant was guilty of stalking. The first circuit found that the prosecution had failed to prove one of the elements of stalking: "following." The *Young* court also concluded that the prosecution had failed to satisfy the element of stalking alternate to "following": "harassing." The first circuit conceded that the defendant's behavior had been annoying, but Young had a constitutionally protected right to be present in or around the courthouse even on days when his case was not on the docket because the building was open to the public. Moreover, the defendant's phone calls and letters seeking to speak with the judge had been inappropriate before he became a *pro se* litigant, but once Young began representing himself, that contact became reasonable for court business. Additionally, the defendant's call to the judge's former secretary could reasonably have been for the purpose of gathering information to add to the disciplinary complaint Young had been in the process of compiling against the judge.

The first circuit also determined that stalking is a specific intent crime and found that, even assuming that the State had successfully proven willful, malicious, and repeated "harassing," the trial court should have had reasonable doubt that Young acted with the requisite specific intent. Notably, the prosecution failed to demonstrate both that the defendant had ever spoken to the judge outside of the courtroom except in relation to his civil case and that Young had ever conveyed a threat or a semblance of a threat either orally, in writing, or physically. Thus, the State failed to prove that the defendant had the specific intent to place the judge in fear of death or bodily injury.

The difference between the reversals issued in *Rico* and *Young* and the affirmance in *Higginbotham* appears to be whether the State presented evidence that the defendant made any overt threat of death or bodily injury to the victim in order to prove the specific intent requisite to support a stalking conviction. In this case, there is no evidence that Defendant followed the Wrights. Thus, in order to prove stalking, the State must have proven that Defendant harassed the Wrights, which means that the prosecution must have introduced evidence showing that Defendant committed a series of acts, i.e., verbal or nonverbal communications addressed to the Wrights, evidencing his specific intent to inflict a continuity of emotional distress upon them. La.R.S. 14:40.2.[1]

Louisiana Revised Statutes 14:40.2 does not specifically define "following," and the *Higginbotham*, *Rico*, and *Young* courts all seemed to apply the standard interpretation of the term "following" to their cases: pursuit by traveling after. The *Higginbotham* court determined that driving past or standing near

_____

[1] The statutory definition of "harassing" defines it as a "repeated pattern of verbal communications or nonverbal **behavior**"; however, the examples of nonverbal behavior given in the statute are all communicative in nature: e-mailing or sending messages via other means. La.R.S. 14:40.2(C) (emphasis added). This appears to clarify and codify the principles set forth in the jurisprudence regarding the need to have the threat communicated by the defendant.

7

someone's abode did not constitute "following." *Higginbotham*, 790 So.2d at 650. The *Rico* court found a "following" when the accused closely pursued the victim. *Rico*, 741 So.2d at 777. The *Young* court concluded that parking near someone's home and frequenting areas where and at times the alleged victim would typically be present did not constitute "following." *Young*, 712 So.2d at 285. Therefore, as Defendant did not pursue the Wrights, the State failed to establish a "following" in this instance.

A stalking may occur when a perpetrator willfully, maliciously, repeatedly, and uninvitedly is present at someone's home **and** the perpetrator makes verbal or behaviorally implied threats that would cause a reasonable person to become alarmed or suffer emotional distress. *Id.* Because constitutionally protected activity is not included in the prohibited actions; because Defendant had the right to travel on the public roadway, use the parking area of the public walking park, and access the public areas of the apartment complex; and, because driving on the road and turning around in public parking areas do not constitute communication, those actions should not be considered a series of acts constituting harassment.

Since the State failed to prove that Defendant had the specific intent to commit stalking through submitting evidence showing that Defendant verbally or behaviorally communicated a threat to either of the Wrights, the prosecution failed to prove beyond a reasonable doubt that the Defendant was guilty of either stalking or attempted stalking. Therefore, the trial court, as a reasonable trier of fact, should not have found the essential elements of stalking proven beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. Accordingly, we reverse Defendant's conviction, vacate Defendant's sentence, and enter an order of acquittal.

Our decision on the issue of insufficiency of the evidence renders moot the Defendant's contention that his waiver of a jury trial was invalid.

## CONCLUSION

Based on the foregoing, we reverse the conviction of the Defendant, Timothy J. Ryan, vacate his sentence, and enter an order of acquittal.

**CONVICTION REVERSED; SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED.**