982 So.2d 179 (2008)
STATE of Louisiana
v.
Barry A. PLAISANCE.
No. 07-KA-822.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2008.
*180 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler, Appellate Counsel, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Appellee, State of Louisiana.
Larry C. Pieno, Marrero, LA, for Appellant, Barry A. Plaisance.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
On September 22, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Barry A. Plaisance, with stalking, first offense, in violation of La. R.S. 14:40.2. Defendant was arraigned and pled not guilty.
On September 25, 2006, the State filed an amended bill of information indicating that the offenses occurred on or between March 27, 2003 and August 19, 2004. On September 26, 2006, defendant waived his right to a jury trial and the matter proceeded to trial. That day, the trial judge found him guilty as charged.
On October 4, 3006, the trial judge sentenced defendant to imprisonment in parish prison for six months. Defendant filed a timely motion for appeal.
Facts
Deborah Gregory testified at trial regarding three encounters with defendant. The first incident occurred on March 27, 2003 at a park in Westwego. Ms. Gregory and her friend, Myra Thibodeaux, who is defendant's sister, went to the park between 5:00 p.m. and 6:00 p.m. to exercise. Defendant was also on the track that night. After defendant's girlfriend, Cindy Plaisance, arrived at the track, defendant started screaming obscenities at Gregory and Thibodeaux stating that if the women came back to the park, "they were going to find [their] f* * *ing old dead asses" there and "nobody would do anything about it because they wouldn't know who did it." Gregory and Thibodeaux reported that defendant also called them "whores."
Gregory dialed 911 on her cell phone to report the incident to the police and the women continued to walk away from the defendant. While Gregory was on the phone, defendant kept "hollering" at Thibodeaux. Gregory testified that when she and Thibodeaux came around the back side of the track near the tennis courts, she noticed that defendant and Plaisance had gotten into a pickup truck. She further testified that defendant then "gunned" the *181 truck like he was going to run over them and told them again that he would see to it that "they would find [their] f* * *ing dead asses" in the park.
By the time that two Westwego police officers arrived at the park, defendant had left. Gregory subsequently gave a statement to the police. Gregory said that defendant's comments made her feel afraid and intimidated. Gregory also feared what defendant would do to her because she had known his sister for many years and was aware of defendant's prior criminal convictions.
Thibodeaux testified at trial regarding this incident, and her testimony largely corroborated that of Gregory. Thibodeaux also testified that Gregory never walked on the track after that incident because she was scared of defendant.
Regarding the second incident, Gregory testified that she worked for the federal government as a contract court reporter for a judge who handled social security disability hearings. When she learned that defendant had a hearing before the judge she worked for, she recused herself.
Gregory testified that, at approximately 9:30 or 9:45 a.m. on November 5, 2003, she observed defendant and Plaisance in a hallway next to the lobby of her workplace. When Gregory came out of the lobby and headed toward the hearing room with another claimant, Plaisance made a comment that she would see Gregory later. Gregory testified that defendant said, "`No, I'll take care of her later.'"
Gregory indicated that defendant's comment was directed at her in a tone loud enough for her to hear. She perceived the comment as a threat because of the incident that had occurred with defendant in the park. Gregory explained that only she, defendant, and Plaisance were present when the comment was made. She reported the incident to her office manager. Afterwards, Homeland Security and federal marshals came to talk to her, and they made reports.
Regarding the third incident, Gregory testified that, on August 19, 2004, at approximately noon, she visited Thibodeaux at her rental property while Thibodeaux was cutting the grass. While she was there, Donna Chain, who was a tenant in one of defendant's apartments at the time, asked Gregory for a ride to the Canal Bank Inn. Gregory agreed. Afterwards, Gregory and Chain left the apartments and went to the Canal Bank Inn. When they left, she noticed that defendant and Plaisance were parked across the street at the time.
After Gregory dropped Chain off at the bar, Gregory attempted to back up to leave, but defendant had pulled his vehicle behind hers and would not let her leave. Gregory waited, and defendant "hollered" something, but Gregory could not understand what he said. When defendant finally left, Gregory drove to the police department to report the incident, because it was her third bad encounter with defendant. Gregory testified that it scared her when defendant would not let her leave the parking space. She recalled other incidents where she would turn around and defendant would be there. However, she did not feel like defendant was following her until after the third incident occurred.
Thibodeaux testified that, on the day in question, Gregory offered Chain a ride to a job interview. She further testified that, after Chain got into the car and Gregory left, defendant followed her vehicle in his vehicle all the way up to Avenue B. She did not see where defendant went afterwards.
After the State rested its case, defendant testified that he made no threats to Gregory or Thibodeaux on March 27, 2003. *182 He indicated that he could have been at the track because he frequented the park at that time. Defendant testified that the Westwego police arrested him in connection with that incident two months after it allegedly occurred.
With regard to the disability hearing on November 5, 2003, defendant admitted that he saw Gregory twice prior to going into the hearing room. However, he claimed that he did not talk to her or about her. Two months later, Homeland Security personnel and the Westwego police came to his house to talk to him regarding the incident. Although he was not at home, he eventually talked to them with his lawyer and "it was all dismissed."
With respect to the August 19, 2004 incident, defendant denied following Gregory to the Canal Bank Inn and blocking her vehicle in its parking space. He testified that the Westwego police arrested him in connection with that incident as well. Defendant admitted that he had convictions for manslaughter in 1977 or 1978 and distribution of marijuana in 1973.
Cynthia Plaisance, defendant's girlfriend of ten years, testified at trial, and her testimony largely corroborated that of defendant. Additionally, Plaisance admitted that she was financially dependent on defendant.
Charmaine Hilton, defendant's attorney, testified that she represented defendant at the disability hearing on November 5, 2003. She further testified that she saw Gregory before and after defendant's hearing. Further, defendant did not make any comments about Gregory in Hilton's presence.
Donna Chain, a former tenant of defendant's, testified that, on August 19, 2004, Gregory gave her a ride to the Canal Bank Inn so Chain could visit her friends. Chain further testified that she was not aware of anybody following them. She claimed that, when they arrived, Gregory went into the Inn, and defendant and Plaisance were there already. Chain testified that Gregory left the Inn right after they arrived, but defendant stayed. She admitted that she saw defendant and Plaisance on a regular basis at the Canal Bank Inn, where she had worked for the previous three months. Chain also knew the couple because they frequented the restaurant where she used to work, too. She claimed that they never discussed the August 2004 incident.
After hearing the testimony and reviewing the evidence, the trial judge found defendant guilty as charged, stating in pertinent part:
This Court, having considered the evidence which was presented before us and the applicable law, I find the defendant guilty as charged.
The Court notes, while we are not required to comment upon reasons of the finding, I want the record to reflect that the Court does, in deed, find this case to turn upon the credibility of the witnesses.
The evidence presented before us satisfies this judge that the defendant did, in fact, commit the offenses for which he has been charged.
I simply don't believe the testimony of the defense witnesses who suggest that there were no conversations among them, no knowledge of these incidents, nothing whatsoever that ever occurred. And that these two ladies came in here with a specificthere it was a suggestion of conspiracyand I didn't find that was provento do harm to this defendant. There is just no evidence to support that. There is no evidence to support that they had any motive, other than to tell the truth. And, indeed, they both placed themselves in jeopardy, both *183 talked to police officers and provided information, not only to them but to Homeland Security and so forth.
And when we weigh having listened to all of the witnesses and observed their demeanor and noting that all of the witnesses have some motive, exceptthere is no independent witness except Ms. Hilton, and you simply can't testify to what you didn't see.
And I find the State's witnesses to be more credible, to be credible, and for that reason the Court finds the defendant guilty as charged.
On appeal, defendant argues that the evidence was insufficient to support the verdict as it did not show that he intentionally followed or harassed the victim. He further argues that there was no repeated uninvited presence by him, just chance meetings, and there was no continuity in the complained of actions, as they occurred over a period of 17 months. He contends that a reasonable person would not have felt alarmed or suffered emotional distress by the incidents described by the victim. He further contends that there was no implication of a death threat, bodily injury, or other statutory criminal act. He also notes that the specific intent required for stalking did not exist in his actions.
In reviewing a claim for sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
At the time the offenses were committed, La. R.S. 14:40.2 defined stalking as follows:
A. Stalking is the willful, malicious, and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the willful, malicious, and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.
* * *
C. For the purposes of this Section, the following words shall have the following meanings:
(1) "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, sending messages via a third party, or sending letters or pictures.
(2) "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct.
At trial, the victim testified regarding three incidents involving defendant, and defendant's sister testified regarding the first and third incidents. In March of 2003, defendant threatened the victim's life, and the life of his sister, while they were walking on the track, by verbally and behaviorally implying that he was going to kill them. The victim was so afraid of *184 defendant that she stopped going to the track.
Several months later in November of 2003, at his disability hearing, defendant again implied that he was going to kill the victim when he told his girlfriend in front of the victim that she would not see the victim again because he was going to "take care of [the victim] later." Finally, in August of 2004, although defendant did not verbally threaten the victim, he blocked in her vehicle while she was in the parking lot, which would have caused a reasonable person to be alarmed or to suffer emotional distress, based on the two previous incidents.
These three incidents clearly demonstrate that defendant harassed the victim by engaging in a series of acts over a period of time that evidenced an intent to inflict a continuity of emotional distress upon her. Additionally, the evidence showed that the victim had reason to be afraid of defendant, as he had previously been convicted of manslaughter.
Although defendant and his witnesses denied that any of the incidents occurred, the trial judge found the State's witnesses to be more credible. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; therefore, the credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Defendant argues that there is no evidence that he followed the victim. We find no merit in defendant's contention for two reasons. First, the evidence shows that defendant followed Gregory in 2004 when she drove to the Canal Bank Inn to drop someone off Second, and more importantly, the stalking statute requires that the victim be either followed or harassed. (Emphasis added). La. R.S. 14:40.2A. Here, the evidence showed that defendant harassed the victim on three occasions and followed the victim at least once in an eighteen-month time period.
Defendant relies on four cases to support his contention that the evidence was insufficient to maintain the stalking conviction: State v. Rico, 99-158 (La.App. 3 Cir. 6/2/99), 741 So.2d 774, writ denied, 99-1883 (La.12/10/99), 751 So.2d 244; State v. Young, 96-2079 (La.App. 1 Cir. 5/15/98), 712 So.2d 273, writ denied, 98-1598 (La.2/5/99), 737 So.2d 740; State v. Higginbotham, 00-1782 (La.App. 5 Cir. 5/16/01), 790 So.2d 648, writ denied, 01-1756 (La.5/3/02), 815 So.2d 95; and State v. Ryan, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268.
We are not persuaded. The cases of Rico, Young, and Higginbotham are inapposite to the instant case, because the crime of stalking was defined differently at the time of the offenses in those cases. Further, Ryan is factually distinguishable from the instant case.[1] In this case, the record reflects that the defendant verbally and behaviorally communicated threats of bodily injury and death to the victim. In light of the foregoing, we find that a rational trier of fact could have found beyond *185 a reasonable doubt that defendant was guilty of stalking.
In his second assignment of error, defendant argues that the Trial Court erred in failing to allow testimony from the defense relative to the theory of victim conspiracy. He contends that testimony regarding the victim's interference with his social security application was erroneously excluded from the trial.
All relevant evidence is admissible, except where limited by law. La. C.E. art. 402. Relevant evidence is that which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable than without the evidence. La. C.E. art. 401. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. La. C.E. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sosa, 04-507, p. 11 (La.App. 5 Cir. 12/12/06), 948 So.2d 236, 243.
Our review of the record reflects that, although the trial judge sustained the above two objections regarding the outcome of defendant's disability hearing, he, nevertheless, allowed the defense to present its theory of victim conspiracy. Defense counsel asked defendant during direct examination whether the victim had made any comments to him regarding his application for benefits. The prosecutor objected; however, the trial judge allowed defense counsel to proceed after he explained that the comments would show that the victim had a "vendetta" against defendant.
Defendant subsequently testified that the victim told him that as long as she worked for the federal courts and judges, he would never get any disability. Additionally, the record shows that the victim had previously testified that she talked to the judge before defendant's hearing and told him that she needed to recuse herself, because she was close friends with defendant's sister, and that defendant and his sister were in the midst of a rental property dispute.
Defendant's disability attorney testified, without objection, that the decision after the hearing was unfavorable. Therefore, the trial judge heard the evidence of victim conspiracy, including the outcome of defendant's hearing, but decided that the conspiracy to do harm to defendant was not proven. We find that the trial judge did not abuse his discretion by sustaining the two objections regarding the outcome of defendant's disability hearing.
Finally, as is our practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. Our review reveals no errors requiring correction in this case.
AFFIRMED.
NOTES
[1] In Ryan, supra, the defendant drove past the victims' home several times in one day. Id., at 1269-70. At one point, he briefly parked in front of the house, and another time, he stared at one of the victims. On appeal, the court found that the defendant did not follow the victims, nor did he harass them, as the defendant had the right to travel on the public roadways. Id., at 1273-74. The court further found that the evidence did not show that the defendant verbally or behaviorally communicated a threat to the victims. As such, the court concluded that the evidence was insufficient to support the stalking conviction. Id.