NOT DESIGNATED FOR PUBLICATION

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-129

**STATE OF LOUISIANA**

**VERSUS**

**VICTOR LUIS AVILA RAMOS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 14773-17
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

**MANSLAUGHTER CONVICTION AND SENENCE VACATED AND REMANDED FOR NEW TRIAL; OBSTRUCTION OF JUSTICE CONVICTION AFFIRMED WITH INSTRUCTIONS.**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Victor Luis Avila Ramos**

**Stephen C. Dwight**
**District Attorney**
**Post Office Box 3206**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**David S. Pipes**
**Assistant District Attorney**
**901 Lakeshore Drive**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRET, Judge.**

Victor Luis Avila Ramos, Defendant, was found guilty of manslaughter, a violation of La.R.S. 14:31, and obstruction of justice, a violation of La.R.S. 14:130.1. He was sentenced to thirty-five years at hard labor with credit for time served, and fifteen years at hard labor, with credit for time served, respectively. The sentences were ordered to run concurrently. He appeals the nonunanimous verdict for the manslaughter conviction under *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390 (2020), and challenges the sufficiency of the evidence for the obstruction verdict. On appeal, we vacate Defendant's manslaughter conviction and remand the case for a new trial on that charge. Further, we affirm the obstruction of justice conviction with instructions to notify Defendant of the provisions of La.Code Crim.P. art. 930.8 within ten days of this opinion and to file written proof in the record that Defendant received the notice.

**FACTUAL AND PROCEDURAL HISTORY:**

Defendant was arrested for the injury of Lauren Guidry, from which she later died. On May 22, 2017, the Calcasieu Parish Sheriff's Office was called to investigate an incident at the LeBleu Mobile Home Park. The record indicates Ms. Guidry was leaving their mobile home when an argument ensued between her and Defendant. Ms. Guidry was subsequently pinned between the mobile home and a vehicle Ms. Guidry stated was driven by Defendant. Ms. Guidry was brought to Christus St. Patrick's Hospital with extensive injuries. She later succumbed to her injuries after being transferred to Lafayette General Hospital.

Prior to her death, Ms. Guidry gave a statement to officials while at the hospital in which she identified Defendant by name and claimed Defendant smashed her between the mobile home and the vehicle. Thereafter, deputies at the

scene of the incident apprehended Defendant when he rode up to them on a four-wheeler and freely gave them his name. No vehicles believed to be involved in the incident were found at the scene, but the mobile home skirting was damaged. A maroon vehicle was later located some distance away in a gated parking area with a large shed or structure and behind a building labeled "LeBleau Mobile Home Park & Mini Storage." The vehicle had damage to the front passenger side bumper and headlight.

Defendant was ultimately charged with manslaughter and obstruction of justice for tampering with evidence. Defendant, a non-English speaker, was provided a translator and, through counsel, entered pleas of not guilty to both charges. Ultimately, Defendant expressed his desire to represent himself. The trial court inquired into Defendant's educational and linguistic background, warned Defendant that he would be at a disadvantage representing himself, especially considering the language barrier, and informed him of the seriousness of his charges and maximum sentences. Despite this, Defendant elected to continue pro se at trial.

During trial, Defendant was provided an interpreter and had the benefit of stand-by counsel. The jury found Defendant guilty of manslaughter by a ten-to-two verdict and guilty of obstruction of justice by a unanimous verdict on October 10, 2019.[1]

---

[1]When the verdict was read and the jury was polled on October 10, 2019, the trial court announced the vote was eleven to one to convict Defendant of manslaughter. However, at a hearing on October 16, 2019, the trial court explained that, after the verdict was read and the jury was polled, one of the jurors indicated she had misunderstood the polling and did not realize it sought her personal verdict. She indicated she did not vote for the guilty verdict on the manslaughter charge, but she did vote guilty on the obstruction of justice charge. Thus, the verdict was correctly ten to two to convict Defendant of manslaughter and not eleven to one.

The trial court sentenced Defendant to serve thirty-five years at hard labor for the manslaughter conviction. The trial court also sentenced Defendant to serve fifteen years at hard labor for the obstruction of justice conviction. The sentences were ordered to run concurrently.

Defendant now seeks review from this court. He alleges his nonunanimous verdict on the manslaughter conviction is unconstitutional and that the evidence was insufficient to convict him of obstruction of justice.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are two errors patent, one discussed below, and one which is raised and discussed in Assignment of Error Number One.

The record before this court does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8, sending appropriate written notice to Defendant within ten days of the rendition of the opinion, and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.[2]

**ASSIGNMENT OF ERROR NUMBER ONE:**

Defendant contends he is entitled to a new trial because his nonunanimous jury verdict for manslaughter was declared unconstitutional by *Ramos*, 590 U.S. ___. The State agrees Defendant's conviction and sentence for manslaughter

---

[2]This Court notes that resentencing may not be required if Defendant is either not retried on the manslaughter charge or is acquitted after a retrial. Accordingly, this court orders written notice of the provisions of La.Code Crim.P. art. 930.8 rather than notice at resentencing.

should be vacated. The State further agrees the charge of manslaughter should be remanded for a new trial.

Although the concurring justices in *Ramos* did not join in all parts of the majority opinion, the Supreme Court unambiguously determined that nonunanimous verdicts are not permitted by the Sixth Amendment to the Constitution. The prohibition applies to the states through the Fourteenth Amendment and applies to cases pending on direct review. *Id.* at p. 1397; *see also* concurrences by Sotomayor, Kavanaugh, and Thomas, JJ.

Defendant's case was still in the process of direct review at the time of the *Ramos* decision. Thus, *Ramos* applies and requires Defendant's conviction for manslaughter by a nonunanimous jury to be vacated and remanded for a new trial on the manslaughter charge.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Defendant contends the evidence at trial was insufficient to convict him of obstruction of justice. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v.*

4

*Lubrano*, 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

> [A]n appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. [120, 134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 [(2010)](quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (second alteration in original).

Defendant was convicted of obstruction of justice for tampering with evidence. Louisiana Revised Statutes 14:130.1(A)(1) sets forth the necessary elements for a finding of obstruction of justice applicable to this case:

5

The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.

Our courts have further explained the knowledge requirement in La.R.S. 14:130.1(A):

The knowledge requirement in paragraph (A) [of La.R.S. 14:130.1] is met if the perpetrator merely knows that an act reasonably may affect a potential or future criminal proceeding. *State v. Jones,* 2007-1052, p. 9 (La.6/3/08), 983 So.2d 95, 101; *State v. Tatum,* 09-1004, p. 12 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1090. The defendant must also have tampered with evidence with the specific intent of distorting the results of a criminal investigation. R.S. 14:130.1(A)(1). Nothing beyond movement of the evidence is required by the statute if accompanied by the requisite intent and knowledge. *Jones,* 2007-1052, p. 10 (La.6/3/08), 983 So.2d at 101.

*State v. Matthews*, 50,838, 50,839, pp. 16-17 (La.App. 2 Cir. 8/10/16), 200 So.3d 895, 906, *writ denied*, 16-1678 (La. 6/5/17), 220 So.3d 752. Furthermore, our court in *State v. Vercher*, 14-1211, p. 11 (La.App. 3 Cir. 5/6/15), 162 So.3d 740, 747, *writ denied*, 15-1124 (La. 5/20/16), 191 So.3d 1065 (citing *State v. Allen,* 99-320 (La.App. 5 Cir. 7/27/99), 742 So.2d 949) has stated:

[O]bstruction of justice is a specific-intent crime. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Therefore, specific

intent need not be proven by fact but can be inferred from the circumstances and the actions of the defendant.

In the current case, the following testimony was presented to the jury. Detective Roland Jones went to the hospital to interview Ms. Guidry while other officers were dispatched to the scene. The interview was recorded and played for the jury. Ms. Guidry told Detective Jones that she and Defendant had a fight, and she was going to leave their home. She told Detective Jones that Defendant "'put the car in drive and put his foot down to the pedal and smashed [her] between the trailer and the car[.]'"

Several deputies testified regarding the scene and location of the vehicle allegedly involved in the incident. Corporal Miller was the first officer on the scene. He saw two vehicles in the driveway, and he "encountered approximately four subjects" as he noticed "some damage to the trailer and stuff like that, and damage to the door." Officers determined that these vehicles were not part of the investigation and cleared them from the scene. The four individuals were aware of an earlier disturbance, but they had not "figured all that out yet[.]" One of them, a friend or relative of Ms. Guidry, "thought [Ms. Guidry] was being held hostage inside the house and actually kicked in the door, trying to make sure she was all right." Ms. Guidry was not there. Based on evidence at the scene, Corporal Miller "could tell there was a vehicle that accelerated, hit its brakes, and then the damage they described on the vehicle where it was – it was pretty clear what occurred, based on the statements, evidence at scene and stuff like that." Corporal Miller spoke with dispatch to check with other agencies and local hospitals and located Ms. Guidry at St. Patrick's Hospital. He then went to the hospital to see Ms. Guidry.

Deputy Ryan Tarver also arrived on the scene and performed a perimeter check. During this time, he "was approached by a gentleman on a four-wheeler, and [Defendant] was accompanying that gentleman." The man was Felipe Dominguez, and Defendant was a passenger on the four-wheeler. As to the scene of the incident, Deputy Tarver testified that there was damage to the siding and skirting of the mobile home and that tire marks on the driveway veered off to the right, toward the mobile home, coinciding with the damage on the mobile home. Photo evidence corroborated his testimony.

The vehicle involved in the incident was not at the immediate scene. Detective Jones testified that once Ms. Guidry was transported to Lafayette General, he went to the scene of the incident. When he arrived, he saw a lot of law enforcement officers present, but did not see a vehicle. Though the record is unclear regarding who specifically located the vehicle allegedly involved in the incident, Detective Jones testified the vehicle was located "in a gated parking area that's also attached to the trailer park itself." The area "was nowhere near where the trailer was or where the incident occurred. It was kind of hidden off in another location, out of the way. It was a good walking distance away." Detective Jones believed the property was either owned or utilized by someone who "did maintenance and kind of cared for the property, for the mobile home park." The owner, who was not identified in the record, told Detective Jones "that vehicle did not belong to [him] and it wasn't supposed to be there." The vehicle was towed on a flatbed wrecker to the Forensics Investigative Unit (FIU) after obtaining permission from the property owner.

Photos of the gated parking area were admitted into evidence and showed a fenced, gated area between two buildings. A tall, covered area was inside the

fence, and a four-wheeler sat outside the fence to the left of the double gate. One side of the gate was closed, with a yellow chain dangling from it; the other side was opened. Detective Jones described a maroon vehicle and another vehicle under the covered area as "kind of hidden to the right[,]" with the maroon vehicle in line with the open portion of the gate. Detective Jones agreed the area was "a ways off the road[.]" The maroon vehicle had damage consistent with the damage Detective Jones had observed to the mobile home. He also noted that the front passenger seat was reclined all the way back as if someone was laying down.

Although Ms. Guidry said Defendant struck her with his vehicle and pinned her between it and the mobile home, and damage to the maroon vehicle was consistent with the damage to the mobile home, no direct evidence was offered to show the vehicle was owned or used by Defendant. However, Defendant viewed the photos introduced into evidence and heard the testimony about damage to the maroon vehicle. Defendant never testified. He did, however, make comments during his objections and cross examination that the damage to the vehicle shown in the photos was not present at the time of the incident.[3] Defendant also never indicated the maroon vehicle was not involved or that he was not the person involved in the incident. Defendant even stated, through his interpreter at trial, "How is it possible that the car ended up with those scratch marks because when I took her to the hospital, it had no marks, no damage on the vehicle." Nevertheless, Defendant offered no evidence to rebut that of the State or that would support an alternative theory that the damage resulted from anything other than this incident.

---

[3] The trial court informed Defendant that only testimony given from the witness stand could be considered evidence: "Evidence comes from the witness stand . . . . If you want to argue, just argue your position, or argue against the State. That's not under oath. . . . But there's a difference with the way that the Court treats it." The court also instructed the jury following opening statements that evidence comes from the witness stand.

As previously mentioned, Defendant did not testify at trial. He also did not call any witnesses on direct examination. His purported questions to witnesses during cross examination more often resembled arguments and comments about their testimony. During some of those comments and during objections, Defendant admitted "a person" was between the car and the trailer at the time of contact. Although the State showed evidence to the contrary, Defendant argued the vehicle's tire went off the driveway, and any impact was at zero miles per hour and not the twenty-two miles per hour without the brakes being activated as presented by the State. He also argued the damage to the vehicle was not in the same place as where the vehicle had struck Ms. Guidry and that there was no damage to the vehicle when he took Ms. Guidry to the hospital. Defendant presented no evidence to support those claims.

To prove obstruction of justice, the State must prove that the "perpetrator merely knows that an act reasonably may affect a potential or future criminal proceeding" and that the defendant "tampered with evidence with the specific intent of distorting the results of a criminal investigation. . . . Nothing beyond movement of the evidence is required by the statute if accompanied by the requisite intent and knowledge." *Matthews*, 200 So.3d 895, 906. "[S]pecific intent need not be proven by fact but can be inferred from the circumstances and the actions of the defendant." *Vercher*, 162 So.3d 740, 747. Additionally, on review, this court must view "the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *Leger*, 936 So.2d at 170.

10

No direct evidence was presented to show Defendant or someone at his direction parked the vehicle where it was found with the intent to affect the criminal investigation. However, a review of the circumstantial evidence supports the theory that Defendant or someone on his behalf moved the vehicle involved in this incident from the scene to the gated parking area. The vehicle was not at the scene when the first officer arrived. Additionally, Defendant's comments during trial may be interpreted as a motive for moving his vehicle to a location away from the scene of the incident and a reason to try to hide it from the investigation: he struck Ms. Guidry, pinned her between the vehicle and the trailer, and damaged the vehicle. Testimony that at least four people were at the scene when officers arrived, one of whom kicked in the door of the mobile home, may explain why Defendant did not want to return to the scene without officers present. However, when Defendant did return once officers arrived, he returned without the vehicle, choosing to leave the vehicle in a more hidden location away from the scene.

After a review of the record, this court finds that a rational trier of fact could find that the circumstances, as presented to the jury, proved beyond a reasonable doubt Defendant's specific intent to distort the results of the criminal investigation of the victim's death. Thus, we find the evidence sufficient to convict Defendant of obstruction of justice for tampering with evidence.

**DECREE:**

For the above stated reasons, Defendant's conviction for manslaughter is vacated and remanded for a new trial on the manslaughter charge. Defendant's conviction for obstruction of justice is affirmed. Additionally, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 sending appropriate written notice to Defendant within ten days of the rendition of

the opinion and to file written proof in the record that Defendant received the notice.

**MANSLAUGHTER CONVICTION AND SENTENCE VACATED AND REMANDED FOR NEW TRIAL; OBSTRUCTION OF JUSTICE CONVICTION AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.