960 So.2d 237 (2007)
STATE of Louisiana
v.
Damond J. STAMPS.
No. 06-KA-971.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2007.
Paul D. Connick, Jr. District Attorney, Terry M. Boudreaux, Thomas J. Butler, Laura S. Schneidau, Assistant District Attorneys, Gretna, LA, Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
*238 Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant/appellant, Damond J. Stamps ("Stamps"), was charged and convicted of committing public intimidation upon Deputy Douglas H. Graffeo ("Deputy Graffeo") of the Jefferson Parish Sheriff's Office, a violation of LSA-R.S. 14:122. The bill was amended to add an additional victim, Sergeant Joe Ragas ("Sergeant Ragas"). Stamps filed a motion for post-verdict judgment of acquittal, arguing that the jury misapplied the law and facts and that the State failed to prove specific intent. Stamps also filed a motion for new trial. The motions were denied and, thereafter, Stamps was sentenced to two years of imprisonment at hard labor. Stamps appeals, alleging the evidence was insufficient to support the verdict. We affirm.
At trial, Deputy Graffeo of the Jefferson Parish Sheriff's Office testified that, on July 6, 2005 at approximately 9:50 p.m., he responded to a call at 1256 Aberdeen in Harvey involving an altercation. Defendant's brother, Dalton Stamps ("Dalton"), had been accused of domestic battery by the victim, Syreeta Leslie ("Ms.Leslie"). According to Deputy Graffeo, Dalton was not at the scene, although several parties were yelling at one another. Stamps kept interjecting himself into the investigation while the deputy was attempting to interview Ms. Leslie. Deputy Graffeo testified that Stamps was using profanity and yelling, telling Ms. Leslie that she was making a mistake; that she was making things worse for herself; that she was going to pay; and that she should not cooperate with the investigation. Deputy Graffeo stated he told Stamps to leave or he would be arrested for interfering with the investigation. As Stamps left, he put up his hand in a motion imitating a firearm and said, "[Y]ou screwing up, we gonna get you" and imitated a hammer falling.
Deputy Graffeo testified he then told Stamps he was under arrest and to go to the patrol car. He stated that Stamps responded, "[Y]ou don't tell me what to do bitch, you don't know who I am." According to Deputy Graffeo, Stamps started to puff out his chest and held his arms out as if he was preparing to fight but became compliant after Deputy Graffeo pulled out his Taser. Deputy Graffeo testified Stamps yelled, "[Y]a'll [sic] f* * *ing up, you don't know who I am. My uncle's a representative. Ya'll [sic] fired. I'm going to have your jobs for this. Ya'll [sic] fired." Deputy Graffeo testified he then placed Stamps in the rear of his patrol car and began to advise him of his rights but was interrupted with Stamps stating, "[Y]ou don't tell me my rights. I know my rights. I've been arrested like a thousand times. I'm a bad mother f* * *er." Thereafter, Stamps repeated his rights to Deputy Graffeo.
According to Deputy Graffeo, while Stamps was in the car and they began to drive away, Stamps then made several threats against Sergeant Ragas, indicating he had allowed Sergeant Ragas to live on three separate occasions previously and that would no longer be the case. Although Sergeant Ragas was by the car at this time, he did not know if Sergeant Ragas heard these threats against him because he was engaged in a discussion with someone on the scene.
Deputy Graffeo testified that had he not drawn his Taser, he would have had to physically fight Stamps. He further stated that he felt Stamps would most likely file a complaint with internal affairs, that he believed Stamps could conceivably carry out his threat, and that he thought his *239 job could be in danger. Deputy Graffeo testified he believed Stamps' statements were made to influence him to "un-arrest" him or go with a lower charge. Deputy Graffeo believed Stamps meant he was going to have their jobs because they were arresting him. On cross-examination, Deputy Graffeo testified that Stamps did not specifically state that "I am going to have your job if you don't release me from arrest," although it was implied.
During the course of the interview with Ms. Leslie, Sergeant Ragas of the Jefferson Parish Sheriff's Office had positioned himself between Stamps and Ms. Leslie. Sergeant Ragas testified that he arrived shortly before Deputy Graffeo and, while talking to the victim, Stamps was interfering by threatening the victim and so Stamps was asked to step away from Ms. Leslie. After asking him to leave several times, Sergeant Ragas and Deputy Graffeo directed Stamps to the police vehicle, to get him away from the victim. When Stamps didn't comply, Deputy Graffeo drew his Taser to diffuse the aggression. Sergeant Ragas testified that, while he was trying to get Stamps to keep his hands on the patrol car and pat him down, Stamps made threats against the officers' jobs because someone in his family was a representative. Sergeant Ragas had personal knowledge this might be true and was intimidated, believing he might be in internal affairs the next day. He believed that Stamps made these statements to get out of going to jail and that he was trying to influence them to release him or not arrest him. At one point, Sergeant Ragas testified that he believed that the threats toward him were made after the arrest but then stated that Stamps did intimidate him prior to the arrest until the time they "affected the arrest."
Ms. Leslie testified she called the police because of an altercation with Dalton. Stamps had asked Dalton to leave the house before the police arrived. Stamps did not yell at her, threaten her, or make a gun-like motion to her. According to Ms. Leslie, it sounded like the police did not like Stamps from the comments she heard the officers saying, indicating that they knew who he was. She testified Stamps only asked the officers to move their cars because he was blocked in and that he did not intimidate the officers. She never heard Stamps make any threatening or belligerent remarks to the police. No one in Stamps' family has intimidated her with regard to her testimony at trial, and Ms. Leslie had even phoned the District Attorney's Office to see if the charges against Stamps could be dropped.
Theo Stamps ("Theo"), Stamps' brother, testified that Stamps was parked in the driveway and was blocked in by the police. Stamps asked them to let him go. Theo testified that he did not hear Stamps yell at Ms. Leslie. He also stated he heard one officer say, "[H]ey, wasn't that the guy we sprayed with the mace and we kicked in the door?" Then, he heard the officers say, "[L]et's get him." Theo denied hearing Stamps say anything about being related to a representative or the officers being fired. He also denied hearing threats against Sergeant Ragas.
Stamps' mother, Sharon Edmonson, testified that she was on the phone with Stamps at the time, and he told her his car was blocked in by the police. She heard when the police said to her son, "[S]tep over here and get on the car." Then Stamps told her "they got the guns on me." She testified she did not hear threats or cursing at the police officers. She also testified, as did her son, Theo, that no relative is a representative.
Leshanone Burrle ("Burrle") testified that Stamps, her children's father, did not threaten or curse at Ms. Leslie. At the *240 time of the incident, Burrle lived next door to Ms. Leslie. Stamps was leaving the house to go to his mother's when the altercation occurred between Ms. Leslie and Dalton. As Stamps went to get into his car, he asked the police to move their cars, and they refused. Stamps was told to get on the police car, and she heard them state they knew who Stamps was. She testified that she did not hear him curse or threaten either Ms. Leslie or the police, or say he would get their jobs. She later stated she was not outside the whole time.
Stamps himself testified that he saw Dalton outside arguing with Ms. Leslie and told his brother to leave. When he came back outside, Stamps saw a number of police cars and when he asked Deputy Graffeo to move, he was told the officer was conducting an investigation. He then admitted to the police that he had told Ms. Leslie to "take her business inside." Sergeant Ragas grabbed him and twisted him. "I was like hey you ain't touch me to talk to me, I guess that's when he kept saying that I was brushing up to him. . . ." He denied threatening the officers, including making threats that they would be fired if they did not let him go as well as other threats against Sergeant Ragas.

ASSIGNMENT OF ERROR NUMBER ONE
Stamps argues on appeal that, even if the threats are believed, the testimony did not support the verdict. He urges that the idle threats came after he had been taken into custody and never contained a "quid pro quo," in that there was never an "or else" designed specifically to influence the officers' performance of their duties. Further, he argues the statements were simply threats of retaliation or revenge made after the fact.
Under Jackson,[1] the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, and the discretion of the jury should be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."[2] This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[3]
LSA-R.S. 14:122, in pertinent part, provides the following: "A. Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: (1) Public officer or public employee."
The offense of public intimidation requires specific criminal intent.[4] Public intimidation is not the intentional use of force or threats upon a public employee, but rather the use of force or threats upon the employee with the specific intent to *241 influence the employee's conduct in relation to the employee's duties.[5] Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the defendant.[6] The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard.
Despite the testimony of Stamps' witnesses, the jury chose to believe the threats were made, and it is not our function to second-guess the credibility of witnesses as determined by the trier of fact, or to re-weigh the evidence.[7] The issue before us is whether the evidence was sufficient to establish Stamps' specific intent to influence the officers' conduct.
Stamps relies on State v. Love[8] and State v. Hall[9] in support of his position. The cases are distinguishable on their facts. In Love, the facts, as outlined in the opinion, supported the conclusion that the comments were made out of anger and in retaliation after the defendant fought with an officer, escaped apprehension, and then was being transported to the police station. The court held that the defendant did not indicate in any way that his threats were intended to influence the officer's behavior, and lacked an "or else" meaning. In Hall, the defendant continued to threaten the witness even after the defendant entered a guilty plea, which supported the Hall court's conclusion that the evidence failed to exclude the reasonable hypothesis that the defendant acted with a purpose other than to influence the witness' conduct.
This Court has previously reviewed the cases cited above and found that the common thread running through them is the consideration of whether the threats are made in anger as revenge or retaliation, or whether they are made in an attempt to influence the conduct of the public officer in relation to his or her duties.[10] Each case turns on the facts presented.[11] In Jones, the defendant threatened a deputy and was then instructed to get into the police car. He continued making threats in the backseat until another deputy arrived on the scene. The defendant was then arrested. We found that the defendant made the threats of physical violence and employment termination before he was arrested, with the intent to persuade the officer not to arrest him, and that the circumstantial evidence was sufficient to support the defendant's public intimidation conviction.
Although Stamps' argument focuses on the timing of the threats as being made after he was arrested, the public intimidation statute does not have an arrest element, but more broadly includes "conduct in relation to his position, employment, or duty[.]" LSA-R.S. 14:122. In the present case, Deputy Graffeo testified *242 that, when he asked Stamps to step away, Stamps imitated pointing a firearm, saying, "[Y]ou screwing up, we gonna get you," prior to Stamps being taken into custody. Thus, at least some of the threats against the officers were made prior to Stamps being physically apprehended, being placed in the rear of the patrol car, and read his Miranda rights. Even if Stamps was arrested at the time the threats were made, he threatened the officers before he was transported and booked.
The jury could have believed that the officers' duties did not end with the arrest. Once in custody, a defendant must be transported and booked. Even thereafter, the officers' duties could continue, requiring them to testify as a witness at Stamps' trial. The content of Stamps' threats reflect that he thought he had a political connection which could be used to benefit him in this situation by influencing the officers' conduct. Even if Stamps made the threats to avoid arrest when he had actually already been arrested, the jury could have believed that Stamps felt he could still influence the officers' conduct since, at the time, he had not yet been handcuffed, read his rights, put in the patrol car, or taken to the station and booked. Sergeant Ragas testified he believed Stamps was trying to influence their decision and to release him or not arrest him. Also, he testified Stamps intimidated him prior to the arrest until the time they "affected the arrest." Deputy Graffeo testified he believed Stamps' statements were made to influence him to "un-arrest" him or to go with a lower charge.
On the evidence presented, the jury could have found that the threats were made not in retaliation or revenge but, rather, were made to influence the officers' conduct by means of a political connection. A rational trier of fact could have inferred the requisite specific intent to influence the officers' conduct from Stamps' threats. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Although this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920, Stamps requests an error patent review. On our review, we find no errors patent requiring corrective action.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[2] State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
[3] State v. Wooten, supra.
[4] State v. Meyers, 94-231 (La.App. 5 Cir. 9/14/94), 643 So.2d 1275.
[5] Id.
[6] State v. Graham, 420 So.2d 1126, 1127 (La. 1982) (citations omitted); State v. Lewis, 98-672 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 559, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334 (citation omitted).
[7] State v. Baker, 01-1397 (La.App. 5 Cir. 4/30/02), 816 So.2d 363.
[8] 602 So.2d 1014 (La.App. 3 Cir.1992).
[9] 441 So.2d 429 (La.App. 2 Cir.1983).
[10] State v. Jones, 00-980 (La.App. 5 Cir. 10/18/00), 772 So.2d 788.
[11] Id.