# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-836

**STATE OF LOUISIANA**

**VERSUS**

**WILLIS J. MOUTON AKA**
**WILLIS JAMES MOUTON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 130280.1
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED; SENTENCE VACATED**
**AND REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorney**
**J. N. Prather, Jr.**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, Louisiana  70502-3306**
**(337) 232-5170**
**Counsel for Appellee:**
**State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
        **Willis J. Mouton**

**KEATY, Judge.**

Defendant, Willis J. Mouton, also known as Willis James Mouton, was charged by bill of information filed on August 24, 2010, with simple burglary of an automobile, a violation of La.R.S. 14:62, and public intimidation, a violation of La.R.S. 14:122. Defendant entered a plea of not guilty on August 30, 2010. Defendant waived his right to trial by jury on November 8, 2011, and the matter proceeded to trial before the bench. Defendant was subsequently found guilty as charged. On December 12, 2011, Defendant was sentenced to twelve years for simple burglary and to five years at hard labor for public intimidation. The sentences were to be served concurrently.

Defendant filed a motion for appeal on December 20, 2011, asserting two assignments of error. Therein, he contends the evidence was insufficient to support his convictions for simple burglary and public intimidation, and his sentences are excessive.

## FACTS

Defendant was convicted of the simple burglary of a car belonging to Vergie Clay (Clay) and of the public intimidation of Officer Calvin Parker (Officer Parker).

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, there is an error patent regarding Defendant's simple burglary sentence. Louisiana Revised Statutes 14:62 carries a term of imprisonment for not more than twelve years with or without hard labor. The trial court imposed a twelve-year sentence for simple burglary without specifying whether it was to be served with or without hard labor.

Although the court minutes and the commitment order indicate the simple burglary sentence was imposed at hard labor, the transcript does not reflect this. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. The trial court's failure to specify whether the sentence for simple burglary was to be served with or without hard labor rendered the sentence indeterminate, requiring the sentence be vacated and the case remanded for resentencing with the trial court being instructed to specify whether the sentence is to be served with or without hard labor. *See State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied*, 08-1664 (La. 4/24/09), 7 So.3d 1193. Accordingly, Defendant's sentence for simple burglary is vacated, and the case is remanded for resentencing. At the resentencing, the trial court is ordered to specify whether the sentence is to be served with or without hard labor.

Additionally, there is an error patent regarding the trial court's advisement of the prescriptive period of La.Code Crim.P. art. 930.8. Following sentencing, at a separate proceeding in which Defendant was not present, the trial court in open court set forth the prescriptive period for filing post-conviction relief pursuant to La.Code Crim.P. art. 930.8. Defendant's attorney was present at the proceeding.

Louisiana Code of Criminal Procedure Article 930.8(C) provides:

> At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. If a written waiver of rights form is used during the acceptance of a guilty plea, the notice required by this Paragraph may be included in the written waiver of rights.

The record before this court does not indicate that the notice of the prescriptive period was given to Defendant. Thus, the trial court is ordered to inform Defendant of the provisions of Article 930.8 at resentencing.

# ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends the trial court erred in finding him guilty of simple burglary of an automobile and public intimidation.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La.7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La.2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La.10/4/96), 680 So.2d 1165). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La.10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27).

However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on

3

circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La.10/22/10), 49 So.3d 372, 378.

*State v. McKithern*, 11-1402, pp. 6-7 (La.App. 3 Cir. 5/2/12), 93 So.3d 684, 691.

Defendant was convicted of simple burglary of an automobile.

In order to obtain a conviction for simple burglary, the elements of the crime must be proven beyond a reasonable doubt. The elements of the crime at issue, simple burglary, are contained in La.R.S. 14:62:

Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein. . . .

Like most felonies, burglary consists of an act element and an intent element. La.R.S. 14:7, 14:8. The act element, or *actus reus*, is the unauthorized entry of a dwelling or vehicle. The intent element, or *mens rea*, is the specific intent to commit a theft (or other felony) in the dwelling or vehicle. *State v. Maxie*, 614 So.2d 1318 (La.App. 3 Cir.1993). Theft is defined by La.R.S. 14:67(A) as follows:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371-72.

Defendant was also convicted of public intimidation.

La.R.S. 14:122(1) defines public intimidation as the use of violence, force or threats upon a public officer or employee with the intent to influence his conduct in relation to his position, employment or duty. Without question, a law enforcement officer is such a public officer or employee.

4

The offense of public intimidation requires specific criminal intent. Public intimidation is not simply the intentional use of force or threats upon an officer, but rather the use of force or threats upon the officer with the specific intent to influence the officer's conduct in relation to the officer's duties. *State v. Jones*, 00-980 (La.App. 5th Cir.10/19/00), 772 So.2d 788; *State v. Meyers*, 94-231 (La.App. 5th Cir.09/14/94), 643 So.2d 1275.

Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. *State v. Harris*, 00-3459 (La.02/26/02), 812 So.2d 612; *State v. Kahey*, 436 So.2d 475 (La.1983); *State v. Ellis*, 28,282 (La.App.2d Cir.06/26/96), 677 So.2d 617, *writ denied*, 96-1991 (La.02/21/97), 688 So.2d 521.

*State v. Mead*, 36,131, pp. 1-2 (La.App. 2 Cir. 8/14/02), 823 So.2d 1045, 1046-47, *writ denied*, 02-2384 (La. 3/14/03), 839 So.2d 34.

Clay testified that on or about June 26, 2010, she owned a 2004 Ford Focus. Clay stated that someone whom she did not know busted her car window. She further testified that she did not know Defendant and did not give him permission to break the window or enter the car.

Detective Andrew Vanhoossier (Detective Vanhoossier) testified that he was conducting a special operation on the date in question due to a rash of car burglaries in the area surrounding Jefferson Street. Detective Vanhoossier testified that at approximately 2:00 a.m. Officers Calvin Parker and Moniqua Porter observed a car with a shattered window. They observed suspects in the area, and when they drove up, the suspects ran. As the first suspect ran by, Detective Vanhoossier caught him. Police then began searching for the second suspect, a black male wearing a light blue shirt with braided hair. Ten to fifteen minutes later, Detective Vanhoossier saw a black male who was not wearing a shirt sitting on the curb of the Acadiana Outreach Center, a homeless shelter. Detective

Vanhoossier approached the man and detained him. Next to the man was a light blue shirt and a bandanna which had a chain wrapped in it and which contained glass fragments. The man was brought back to the scene and was identified by the other suspect as the person he had previously been with. Detective Vanhoossier testified that the second man apprehended had braids in his hair.

Detective Vanhoossier and Officer Parker testified that neither saw Defendant enter the car. Further, they both testified that, to their knowledge, Defendant did not take anything from the car.

Officer Parker was also questioned regarding threats made by Defendant as follows:

BY MR. PRATHER:

Q: Also, during the apprehension and detention of Willis Mouton, this defendant, did he threaten to – did he make any threats to you?

BY OFFICER PARKER:

A: Yes, he kept saying we would be sorry for arresting him. He's was going to sue us and he was going to get our jobs. So, --

BY MR. PRATHER:

Q: Do you think he was trying to influence your behavior at that time?

. . . .

A: Yes.

. . . .

BY MR. ALONZO:

Q: Just on that subject, while we are on that. He didn't threaten you with any bodily injuries, correct?

BY OFFICER PARKER:

A: No, sir. He was handcuffed.

6

BY MR. ALONZO:

Q: He didn't threaten to kill you or anything?

BY OFFICER PARKER:

A: No, sir.

BY MR. ALONZO:

Q: Just told you he was going to exercise his right to a civil law suit, right?

BY OFFICER PARKER:

A: No, he said he was going to take my job; he was going to get my job.

BY MR. ALONZO:

Q: He also told you that –

BY OFFICER PARKER:

A: He was going to sue me.

### *Simple Burglary*

Defendant asserts the State failed to prove he shattered the window of the car belonging to Clay or that he entered the car with the specific intent to commit a felony or theft therein. Defendant points out that no one testified they saw him break the window. Additionally, nothing was removed from the car. Defendant asserts the only evidence of a possible crime was the glass fragments in the bandana found next to him and the fact that he fled from police. Defendant contends that this evidence was not sufficient to prove he had the specific intent to commit a felony or theft inside the car.

In support of his argument, Defendant cites *State in Interest of S.P.*, 11-1598 (La.App. 4 Cir. 5/2/12), 90 So.3d 528. Therein, the juvenile was adjudicated delinquent for simple burglary of an automobile. He appealed, alleging the

7

evidence was insufficient to support his adjudication. Evidence adduced at the adjudication hearing indicated the window of an automobile was broken.

The fourth circuit found:

> Even viewed in the light most favorable to the prosecution, although the window was smashed there is no evidence of entry into the vehicle. Further, although smashing a window constitutes evidence of the intent to damage the vehicle . . . it does not necessarily constitute evidence of an intent to enter the vehicle as, concomitantly, would be required to find him guilty of the lesser criminal offense of attempted simple burglary. *See* La.Code Crim. Proc. art. 814(A)(43); La.Rev.Stat. 14:62. Accordingly, the judgment of the juvenile court is reversed with respect to the adjudication for simple burglary.

*Id.* at 533.

In the present case, we affirm the trial court's ruling with respect to simple burglary in light of the supreme court's ruling in *State v. Bryant*, 12-233 (La. 10/16/12), 101 So.3d 429. In *Bryant*, the defendant was convicted of simple burglary of an inhabited dwelling and aggravated burglary. Upon finding that the evidence was insufficient to establish that the defendant had entered the victim's home, the second circuit set aside the conviction and sentence for aggravated burglary and remanded for entry of judgment of conviction on the charge of attempted aggravated burglary. Upon the State's application for certiorari, the supreme court held the victim's testimony that the defendant never entered his home did not preclude a finding of an entry based on the legal definition of entry in the context of an alleged burglary offense. The supreme court thereafter reversed the second circuit's ruling and reinstated the trial court's conviction for aggravated burglary.

Specifically, the supreme court held:

> Based on the evidence presented at trial, the fact of entry was a reasonable inference when defendant kicked in the door of the house and fully extended his arm in shooting the gun from the step. Thus, we find the court of appeal erred when it held that the State was

8

required to directly prove that defendant's foot crossed the threshold of Mr. Goetz's house. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient under *Jackson* for the trial judge to find an entry was made. Considering the reasons given by the trial judge, we cannot say his finding was erroneous. For the above reasons, we reverse the ruling of the court of appeal and reinstate defendant's conviction for aggravated burglary as well as the second-felony habitual offender adjudication and sentence on that count.

*Id.* at 435.

In the present case, the following circumstantial evidence indicates Defendant broke the glass and had an intent to commit a felony or theft therein:

1. The owner of the car did not know Defendant or give him permission to break her car window. There was no reason to break the window shown by the evidence except that Defendant was attempting a simple burglary;

2. Testimony from Detective Vanhoossier that he was conducting a special operation on the date in question due to the rash of car burglaries surrounding Jefferson Street;

3. The incident occurred at approximately 2:00 a.m. in the very area where the car burglaries were occurring;

4. When Defendant and his accomplice saw the police arrive, they took off running. Detective Vanhoossier caught the first suspect, Defendant's accomplice, as he ran by. Defendant was subsequently apprehended less than fifteen minutes later. Thus, Defendant was thwarted by the police and was actually running away from the police before he could accomplish his intended purpose of burglarizing the vehicle. "Flight indicates consciousness of guilt and is a circumstance from which a jury may infer guilt." *State v. Gatti*, 39,833, p. 9 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, 85, *writ denied*, 05-2394 (La. 4/17/06), 926 So.2d 511;

5. Defendant was the individual sitting on the curb and had on a light blue shirt and a bandana, which had a chain wrapped in it and contained glass fragments consistent with the broken car window. He also matched the description given of the fleeing suspect;

6. Defendant was brought back to the scene and was positively identified by the first suspect, the accomplice, as the person he, the accomplice, had previously been with at the scene; and

7. Officer Parker testified that Defendant was one of the persons he saw running from the scene, but he did not see the actual breaking of the glass as the window was already shattered when Officer Parker came upon the vehicle.

Based on the foregoing evidence presented at trial, the fact of entry was a reasonable inference when Defendant broke the glass window. By breaking the glass window, some part of Defendant's person would have extended inside of the car. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient under *Jackson* for the trial court to have found that an unauthorized entry of the victim's vehicle was made for the purpose of committing a felony or theft. We cannot say its finding was erroneous. For the above reasons, we affirm Defendant's conviction for simple burglary.

### *Public Intimidation*

Defendant contends the evidence was insufficient to support his public intimidation conviction, as there was no evidence that he tried to influence the conduct of Officers Parker and Porter by the statements he made. Defendant asserts he was merely venting his anger, as he felt he was being harassed by police for no reason. He further asserts that he did not have the specific intent to attempt to influence the conduct of the officers in relation to their position, employment, or duty.

In *Mead*, 823 So.2d 1045, the defendant was arrested in his home after a domestic violence incident. While being transported to the police station, the defendant stated: "'I should have shot you this time,' and something to the effect of, 'if you come back again you better bring your arsenal.' Additionally, defendant said, 'I'll do everything I can to get your damn badge,' and 'in about two hours you make the trip back to my house.'" *Id*. at 1048. The officer testified that he thought the threats were made to influence his actions. The second circuit affirmed

10

the public intimidation conviction, stating that the defendant made the threats "before he actually arrived at the police station and was booked with the specific intent to influence" the officer's conduct, "i.e., to persuade him not to complete the arrest or certainly not to respond to any other calls from defendant's residence after defendant's release on bond." *Id*. at 1048.

In *State v. Stamps*, 06-971 (La.App. 5 Cir. 5/15/07), 960 So.2d 237, the defendant, Damond Stamps, was convicted of public intimidation. At trial, Deputy Douglas Graffeo testified that he responded to a domestic disturbance involving Stamps' brother, and Stamps "kept interjecting himself into the investigation while [he] was attempting to interview [the victim]." *Id.* at 238. Officer Graffeo further testified:

> [I] told Stamps to leave or he would be arrested for interfering with the investigation. As Stamps left, he put up his hand in a motion imitating a firearm and said, "[Y]ou screwing up, we gonna get you" and imitated a hammer falling.

> Deputy Graffeo testified he then told Stamps he was under arrest and to go to the patrol car. He stated that Stamps responded, "[Y]ou don't tell me what to do bitch, you don't know who I am." According to Deputy Graffeo, Stamps started to puff out his chest and held his arms out as if he was preparing to fight but became compliant after Deputy Graffeo pulled out his Taser. Deputy Graffeo testified Stamps yelled, "[Y]a'll [sic] f* * *ing up, you don't know who I am. My uncle's a representative. Ya'll [sic] fired. I'm going to have your jobs for this. Ya'll [sic] fired." Deputy Graffeo testified he then placed Stamps in the rear of his patrol car and began to advise him of his rights but was interrupted with Stamps stating, "[Y]ou don't tell me my rights. I know my rights. I've been arrested like a thousand times. I'm a bad mother f* * *er." Thereafter, Stamps repeated his rights to Deputy Graffeo.

> According to Deputy Graffeo, while Stamps was in the car and they began to drive away, Stamps then made several threats against Sergeant Ragas, indicating he had allowed Sergeant Ragas to live on three separate occasions previously and that would no longer be the case. Although Sergeant Ragas was by the car at this time, he did not know if Sergeant Ragas heard these threats against him because he was engaged in a discussion with someone on the scene.

Deputy Graffeo testified that had he not drawn his Taser, he would have had to physically fight Stamps. He further stated that he felt Stamps would most likely file a complaint with internal affairs, that he believed Stamps could conceivably carry out his threat, and that he thought his job could be in danger. Deputy Graffeo testified he believed Stamps' statements were made to influence him to ''un-arrest'' him or go with a lower charge. Deputy Graffeo believed Stamps meant he was going to have their jobs because they were arresting him. On cross-examination, Deputy Graffeo testified that Stamps did not specifically state that "I am going to have your job if you don't release me from arrest," although it was implied.

. . . Sergeant Ragas testified that, while he was trying to get Stamps to keep his hands on the patrol car and pat him down, Stamps made threats against the officers' jobs because someone in his family was a representative. Sergeant Ragas had personal knowledge this might be true and was intimidated, believing he might be in internal affairs the next day. He believed that Stamps made these statements to get out of going to jail and that he was trying to influence them to release him or not arrest him. At one point, Sergeant Ragas testified that he believed that the threats toward him were made after the arrest but then stated that Stamps did intimidate him prior to the arrest until the time they "affected the arrest."

*Id.* at 238-39.

In *Stamps*, the fifth circuit stated the following:

This Court has previously reviewed the cases cited above [*State v. Love*, 602 So.2d 1014 (La.App. 3 Cir. 1992), and *State v. Hall*, 441 So.2d 429 (La.App. 2 Cir. 1983)] and found that the common thread running through them is the consideration of whether the threats are made in anger as revenge or retaliation, or whether they are made in an attempt to influence the conduct of the public officer in relation to his or her duties. Each case turns on the facts presented. . . .

Although Stamps' argument focuses on the timing of the threats as being made after he was arrested, the public intimidation statute does not have an arrest element, but more broadly includes "conduct in relation to his position, employment, or duty[.]" LSA-R.S. 14:122. In the present case, Deputy Graffeo testified that, when he asked Stamps to step away, Stamps imitated pointing a firearm, saying, "[Y]ou screwing up, we gonna get you," prior to Stamps being taken into custody. Thus, at least some of the threats against the officers were made prior to Stamps being physically apprehended, being placed in the rear of the patrol car, and read his *Miranda* rights. Even if Stamps was arrested at the time the threats were made, he threatened the officers before he was transported and booked.

The jury could have believed that the officers' duties did not end with the arrest. Once in custody, a defendant must be transported and booked. Even thereafter, the officers' duties could continue, requiring them to testify as a witness at Stamps' trial. The content of Stamps' threats reflect that he thought he had a political connection which could be used to benefit him in this situation by influencing the officers' conduct. Even if Stamps made the threats to avoid arrest when he had actually already been arrested, the jury could have believed that Stamps felt he could still influence the officers' conduct since, at the time, he had not yet been handcuffed, read his rights, put in the patrol car, or taken to the station and booked. Sergeant Ragas testified he believed Stamps was trying to influence their decision and to release him or not arrest him. Also, he testified Stamps intimidated him prior to the arrest until the time they "affected the arrest." Deputy Graffeo testified he believed Stamps' statements were made to influence him to "un-arrest" him or to go with a lower charge.

On the evidence presented, the jury could have found that the threats were made not in retaliation or revenge but, rather, were made to influence the officers' conduct by means of a political connection. A rational trier of fact could have inferred the requisite specific intent to influence the officers' conduct from Stamps' threats.

*Id*. at 241-42 (footnotes omitted).

In the case before us, Officer Parker was asked if Defendant made any threats "during the apprehension and detention." Officer Parker indicated the threats were made after Defendant had been arrested and handcuffed. He did not indicate if they were made in front of the homeless shelter, after Defendant was identified by the co-perpetrator, on the way to the police department, during booking, or at some other time. Officer Parker responded affirmatively when asked if he thought Defendant was trying to influence his behavior but was not asked what he thought Defendant was attempting to persuade him to do. Further, there was no testimony regarding Defendant's demeanor when he made the remarks at issue.

In *Stamps*, 960 So.2d 237, the fifth circuit noted the public intimidation statute did not have an arrest or temporal element. The fifth circuit stated that officers' duties could continue from arrest through trial. In *Mead*, 823 So.2d 1045,

13

the second circuit concluded that threats of physical violence and employment termination before arrival at the police station and booking were made with the specific intent not to complete the arrest, among other reasons, and the jury could have reasonably found the defendant guilty of public intimidation.

Although Defendant had been arrested when he made the comments at issue, Officer Parker testified that he felt Defendant was trying to influence his behavior. Accordingly, based on the evidence presented and the decisions in *Stamps*, 960 So.2d 237, and *Mead*, 823 So.2d 1045, the trial court could have inferred the requisite specific intent to influence the officers' conduct from Defendant's threats and could have found the threats made by Defendant were made not in retaliation or revenge but to influence the officers' conduct. Accordingly, Defendant's conviction for public intimidation is affirmed.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant contends the trial court erred in imposing an excessive sentence. We do not agree.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether

14

the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in *Lisotta*, 726 So.2d at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

Defendant also was convicted of public intimidation, which is punishable by a fine of not more than one thousand dollars or imprisonment, with or without hard labor, for not more than five years, or both. *See* La.R.S. 14:122. Defendant was sentenced to serve five years at hard labor to run concurrent with the simple burglary sentence. No fine was imposed.

Defense counsel failed to object to the sentence or file a motion to reconsider sentence. In *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356, the defendant failed to object to the sentence imposed at the sentencing hearing and did not timely file a motion to reconsider sentence. Thus, this court found his claim of excessiveness of sentence was barred. *See also State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59.

However, this court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence filed. *See, e.g., State v. Quinn*, 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102, *writ denied*, 10-1355 (La. 1/7/11), 52 So.3d 885. Accordingly, we review Defendant's claim as a bare claim of excessiveness.

15

At the sentencing hearing, defense counsel noted Defendant refused a plea agreement that would have gotten him out of jail. The State claimed Defendant had numerous arrests and prior convictions of unauthorized entry of an inhabited dwelling and simple battery. Defense counsel then asked for a presentence investigation report. The trial court denied that request then sentenced Defendant for the offense of simple burglary, stating: "Now, you had an opportunity to enter a better plea." Afterwards, Defendant had an outburst. Defendant was then sentenced to five years imprisonment at hard labor on the public intimidation charge to run concurrent to his simple burglary sentence. He was also found in contempt of court and sentenced to six months imprisonment to run consecutive to his simple burglary sentence.[1]

Defendant contends he received the maximum sentence, which he claims is excessive, as he is not the most egregious offender. Additionally, he claims that the trial court gave no consideration to La.Code Crim.P. art. 894.1. Finally, he asserts that it appears the trial court considered his failure to accept a plea bargain as an aggravating factor.

The State contends this court should conduct a bare bones review of Defendant's sentence because he failed to file a motion to reconsider sentence. The State also admits the trial court failed to state the considerations it took into account at sentencing but argues Defendant "greatly benefitted from the sentence imposed as opposed to the sentencing exposure."

In *State v. Poirrier*, 04-825 (La.App. 3 Cir. 12/1/04), 888 So.2d 1123, the defendant was convicted of public intimidation for threatening to kill a police officer he sold drugs to and was sentenced to five years at hard labor without

---

[1] Because we have vacated Defendant's simple burglary sentence and remanded for resentencing, we need not determine whether the sentence he received for his simple burglary conviction is excessive.

benefit of probation, parole, or suspension of sentence. This court affirmed the defendant's sentence, stating the following:

> In this case, the State agreed to dismiss two additional charges including attempted distribution of a Schedule II controlled dangerous substance, cocaine, and possession of marijuana. Possession of marijuana carried a penalty of up to six months in the parish jail. Attempted distribution of cocaine carried a penalty of up to fifteen years in prison. Therefore, Mr. Poirrier received the benefit of fifteen and one half years less sentencing exposure.
>
> We find that the trial court sufficiently considered Mr. Poirrier's personal and criminal history. The trial court adequately stated its reasons for sentencing him and, based upon the benefit he received by pleading guilty, we cannot say that the trial court abused its wide discretion in sentencing him.

*Id.* at 1127-28 (footnotes omitted).

In *State v. Daniels*, an unpublished opinion bearing docket number 08-1100, (La.App. 1 Cir. 10/31/08), the defendant was convicted of public intimidation for threatening to kill two police officers and their families while he was being transported to jail. The defendant was sentenced to serve three years at hard labor on the public intimidation conviction.[2] The first circuit affirmed the defendant's sentences, noting the lower court had specifically pointed out that it had considered the defendant's criminal record when imposing sentence.

Accordingly, we find that Defendant's sentence is not excessive based on the State's assertion that Defendant has two prior felony convictions and the jurisprudence cited above.

## DECREE

Defendant's conviction for simple burglary is affirmed. Defendant's sentence for simple burglary is vacated, and the case is remanded for resentencing. At the resentencing, the trial court is ordered to specify whether the sentence is to

---

[2] The defendant was also convicted of simple escape and was sentenced to two years at hard labor to run consecutive to his public intimidation sentence.

be served with or without hard labor.  Additionally, the trial court is ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing. Defendant's conviction and sentence for public intimidation is affirmed.

**AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**