STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-226

STATE OF LOUISIANA

VERSUS

MICHAEL JEROME COCHRAN
A/K/A MICHAEL JEROME COCHRAN, JR.
A/K/A MICHAEL COCHRAN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 159452
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

CONVICTION AFFIRMED;
SENTENCE VACATED AND REMANDED.

Annette Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT-APPELLANT:
    Michael Jerome Cochran

**Keith A. Stutes**
**District Attorney, Fifteenth Judicial District**
**Royale L. Colbert, Jr.**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR STATE-APPELLEE:**
     **State of Louisiana**

**PICKETT, Judge.**

## FACTS

The defendant, Michael Jerome Cochran, allegedly raped a minor child, T. J., who was five to eight years old at the time of the crime. The defendant was charged with the aggravated rape of T.J. between October 9, 2010, and October 5, 2013, a violation of La.R.S. 14:42.[1,2] A unanimous jury found him guilty of the responsive verdict of attempted aggravated rape, a violation of La.R.S. 14:27 and 14:42(A)(4), on August 21, 2018. The trial court denied the defendant's "Motion for Post-Verdict Judgment of Acquittal; Alternatively Motion for New Trial" at a hearing on December 11, 2018. The trial court immediately sentenced the defendant to twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court denied the defendant's motion to reconsider his sentence on January 15, 2019. The defendant now seeks review of his conviction and sentence.

## ASSIGNMENTS OF ERROR

1. The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)[,] standard, was insufficient to prove, beyond a reasonable doubt, all of the elements of attempted aggravated rape or the charged offense of aggravated rape.

2. The trial court erred in finding the Hearts of Hope recorded forensic interview was admissible, to the extent noted, as it contained other alleged bad acts both with the same victim and with other girls.

3. The sentence imposed by the trial court violates the Eighth Amendment of the Constitution of the United States and La. Constit. Art. I, § 20, as it was nothing more than cruel and unusual punishment and, thus, excessive.

---

[1]The victim's initials are used in accordance with La.R.S. 46:1844(W).

[2]Louisiana law now refers to this crime as "first degree rape" of a child under the age of thirteen. La.R.S. 14:42(A)(4).

4. The trial court erred in sentencing Appellant immediately following the denial of his Motion for Post-Verdict Judgment of Acquittal; Alternatively, Motion for New Trial and without obtaining a valid waiver from Appellant.

5. Counsel's representation of Appellant fell below that guaranteed by the Sixth Amendment.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent that has been assigned as error in Assignment of Error Number Four and will be discussed in that assignment of error.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues that the evidence was insufficient to prove all the elements of attempted aggravated rape or aggravated rape beyond a reasonable doubt. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, p. 5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 727). Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. [120, 134], 130 S.Ct. 665, 674, 175 L.Ed.2d 582 [(2010)] (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (third alteration in original).

"Aggravated rape is a rape . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because . . . the victim is under the age of thirteen years."[3] La.R.S. 14:42(A)(4). "Any person, who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of

---

[3]This is the wording of the statute at the time the defendant committed the crime.

an attempt to commit the offense intended[.]" La.R.S. 14:27(A). "Mere preparation to commit a crime shall not be sufficient to constitute an attempt[.]" (La.R.S. 14:27(B).

A number of witnesses testified in the defendant's case. The defendant consistently denied the charges against him and maintained his innocence.

*Lieutenant Martin Cormier*

Lieutenant Cormier of the Breaux Bridge Police Department investigated the defendant after Dr. Lawrence Christy reported "that the mother of a juvenile female contacted him regarding her daughter being inappropriately touched," and she wanted her daughter to be examined. The defendant's sister, Jene'a Frederick, had told the child's mother about the inappropriate contact. Lieutenant Cormier arranged for the victim to give a forensic interview at Hearts of Hope (HOH), a child advocacy center. Information obtained during Lieutenant Cormier's investigation showed an incident had occurred when the defendant made the victim perform oral sex on him at the food stamp office in Lafayette.

The victim was ten years old at the time Lieutenant Cormier received the report. The incident occurred when the victim was approximately five to eight years old. Lieutenant Cormier first interviewed the victim's mother. He also interviewed Mrs. Frederick's husband, Robert Frederick.

During the victim's HOH interview, she indicated the first of three separate incidents of assault occurred at her grandmother's residence in Breaux Bridge. She said the defendant called the victim to the back of the residence and placed his penis in her mouth.

The second incident, the subject of the present charge, took place at the food stamp office in Lafayette. When Lieutenant Cormier learned of that incident, he

4

contacted the Lafayette Police Department. No one ever reported a specific date or time for this incident to Lieutenant Cormier.

Lieutenant Cormier's report indicated Mr. and Mrs. Frederick and the victim's mother went inside the food stamp office, and the victim remained in their vehicle with the defendant. The defendant made the victim put his penis in her mouth. When Mr. Frederick returned to the vehicle, the defendant "picked up his pants." During this incident, the defendant slapped the victim when she refused his instructions. The victim said "she was always threatened with bodily harm."

The third incident occurred at the St. Francis Assisi Church in Breaux Bridge. The defendant took the victim home in her grandfather's vehicle but stopped at the church's hall on the way. He again made the victim perform oral sex on him. At the time of trial, the defendant was also facing charges in connection with the two Breaux Bridge incidents.

The victim did not report the incidents to her mother because "[s]he was scared." Lieutenant Cormier testified juveniles often did not report sexual assaults because they were embarrassed or felt no one would believe them.

*Robert Frederick*

Mr. Frederick was incarcerated at the time of trial for failing to pay traffic tickets. He testified that he and his wife had been married "[a]bout eight years," and he had known the defendant "[a] few years."

When the group arrived at the food stamp office, Mr. Frederick, his wife, and his cousin went inside. The defendant and the victim stayed in the vehicle. Mr. Frederick told Lieutenant Cormier he had returned to the vehicle and "seen [sic] [Defendant's] pants unzipped a little bit. And [the victim] was in the front seat." The defendant was in the back seat, and the victim was "[s]miling and happy."

Mr. Frederick said he "ain't [sic] never seen [Defendant] make her do nothing [sic]." Mr. Frederick told his wife what he had seen, and she told the victim's mother. He denied ever telling his wife or Lieutenant Cormier that the victim was crying that day or that she appeared to want to be rescued.

*The victim's mother[4]*

Ms. Jean-Batiste, the victim's mother and the defendant's aunt, had cerebral palsy since birth. She learned something happened between her daughter and the defendant when Ms. Frederick came to her house and told her. She said that she talked to the victim, who told her the defendant "made her put her mouth on his wee-wee and suck." The victim's mother made an appointment with Dr. Christy and contacted Lieutenant Cormier. He "hooked [her] up with . . . Hearts of Hope." At the time of trial, the victim's mother said the victim was "so-so. Some days have bad, some days have good days."

*T.J., the victim*

T.J. was twelve years old when she testified at trial. She recalled speaking with the HOH counselor and telling her of three events involving the defendant. The first event occurred at her grandmother's house in Breaux Bridge. The victim and the defendant were in the back yard when he "pull[ed] down his pants, and he put his stuff in [her] mouth." The victim was five years old at the time; she did not know the defendant's age. She said she had not expected anything bad to happen when the defendant asked her to "come in the backyard" with him. She did not tell anyone about it.

The second incident took place at the food stamp office in Lafayette. The victim testified she was younger than eight years old when it happened. She, her

---

[4] We will refrain from using the victim's mother's name to protect the identity of the victim.

mother, the defendant, and Mr. and Mrs. Frederick, went to the office in a truck driven by the defendant. The victim sat in the front between her mother and the defendant. Mrs. Frederick and the victim's mother "g[o]t down[,]" and Mr. Frederick "went to where he could smoke at [sic]." The victim started to get out of the truck but the defendant said he would watch her, so she stayed.

The defendant "asked [her] to do it again." The victim said she "didn't want to." The defendant "[o]pened the front" of his pants, and she saw his hard penis. The defendant told her to put his penis in her mouth. He touched the back of her head. The victim said, "that's when I was pulling back and then slammed, and I hit my head on the seat buckle." She told him "no," and her mouth never touched his penis. Mr. Frederick arrived, and the victim testified, "And I guess he seen [sic] when his pants was [sic] down. And he hurry [sic] up and picked it up. And then [Mr. Frederick] just left."

Mr. Frederick approached the truck from the passenger side. The defendant's pants were still undone. Mr. Frederick "was just like aww, like he was shocked." The victim said she was crying when her mother returned to the truck. When the victim's mother asked why the victim was crying, the defendant said she fell out of the truck. The victim did not correct him because she was afraid. The defendant and Mr. Frederick were friends at the time, but the victim said she did not know if they were still friends at the time of trial. Later in the trial, she testified they were no longer friends because Mr. Frederick was accused of taking the defendant's phone. She said Mr. Frederick stole sometimes.

The seat buckle was on the victim's right side, near where her hip would be. The defendant hit her after she said no, hard enough on the side of her face to hit the buckle.

7

The victim knew what the defendant had done was a bad thing because "it couldn't be done in front of anyone[.]" Nevertheless, she was not afraid of the defendant in the truck.

The third event took place one night at the St. Francis church hall in Breaux Bridge. The defendant took the victim to the hall in her grandfather's truck. No one else was at the hall. The victim and the defendant walked in, and "he asked [her] one more time." She said no, but she still "put the stuff in [her] mouth." The victim was eight years old. The defendant told her not to tell anyone, and she did not.

The victim came home from school one day, and Mrs. Frederick was at her house. Apparently, Mrs. Frederick said something to the victim's mother because the victim's mother asked the victim if the defendant had touched her inappropriately. The victim "told her yeah[,]" and she went to see Dr. Christy.

The HOH video was played to the jury at trial. The victim was difficult to understand on the video. At one point, she described how the defendant had put his penis in her mouth and pushed her head. Although she had previously been speaking of the second incident, it is unclear whether the victim was speaking of the first or the second incident when she said that.

The victim was ten years old when she made the video and told about the three incidents including the defendant. The video reflects the following testimony:

> She said the first time was in the back yard at her grandmother's house. The defendant pulled down his pants and forced her to put his penis in her mouth. The victim demonstrated how he pushed the back of her head during the incident.
>
> The second time was at the food stamp office. The defendant pulled down his pants and told the victim to do it again. She refused, and he slapped her. She hit her eye on the seat buckle. Mr. Frederick came to the truck, and the defendant pulled up his pants. When her

mother and Ms. Frederick returned to the truck, the victim was crying. When her mother asked why, the defendant said she fell out of the truck.

The third incident took place at the church hall in Breaux Bridge. The defendant took her inside and turned off the lights. He asked her to do it one more time, and he put his penis in her mouth.

The victim said the defendant told Mr. Frederick what he did when they were friends. However, Mr. Frederick's phone went missing, and he thought the defendant had taken it. Mr. Frederick then told Ms. Frederick "the secret," and Ms. Frederick told the victim's mother.

*Michael Jerome Cochran, Sr.*

Mr. Cochran was called to testify solely to establish the defendant's age. He testified the defendant, his son, was twenty-four years old at the time of trial. His date of birth was May 8, 1994.

The defendant did not call any witnesses at trial or offer any evidence.

The defendant contends internal contradictions in the victim's testimony require this court to set aside his conviction. In the HOH video, the victim said the defendant made her put his penis in her mouth, and he pushed her head. At trial, the victim testified the defendant touched the back of her head and told her to put his penis in her mouth, but he did not grab her or try to force her to do it. Her mouth never touched his penis. The defendant claims this testimony is sufficiently inconsistent with what the victim said in the HOH video to create reasonable doubt about his guilt. However, as stated above, the victim was hard to understand in the video, and it was unclear whether she was referring to the first or second incident when she described that particular sequence of events.

The victim also said the defendant's pants were down during the second incident, but Mr. Frederick said the pants were only unzipped. He also said the defendant was in the back seat. Credibility determinations are the province of the

9

jury, and the jury may have resolved that inconsistent testimony with a credibility determination in favor of the victim.

The victim was five to eight years old at the time of this incident. According to her testimony, she had also experienced an earlier incident with the defendant. This court finds any confusion about the details of the two incidents and the fact of the trial four to seven years later could reasonably explain any discrepancies in her testimony. This court finds any inconsistencies in the victim's testimony are not sufficient to negate her testimony that the defendant intended and attempted to have oral sex with her.

In the matter before us, the victim testified the defendant asked her to perform oral sex on him. He either opened his pants or pulled them down. He touched her when he placed his hand on the back of her head. The victim saw the defendant's penis, and he told her to put it in her mouth. This uncontroverted testimony shows an intent to commit a crime and tends directly toward the accomplishing of oral intercourse with the victim.

When viewing the evidence, in its entirety, in the light most favorable to the prosecution, a rational trier of fact could have found proof beyond a reasonable doubt as to each essential element of the crime charged. The evidence was sufficient to find the defendant guilty of the crime charged. The evidence was sufficient to find the defendant guilty of the crime charged. This Assignment of Error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

The defendant alleges the trial court erred by admitting the HOH forensic interview into evidence because it contained evidence of other bad acts with the victim and with other girls. The parties agreed the video would be stopped at the

10

9:45:10 mark, before a discussion about whether the defendant did something to anyone else. The video was actually stopped at "9:45, even."

On the morning of trial, August 20, 2018, the state's counsel advised the defendant and the trial court that he would be using the HOH interview and other evidence to prove the defendant had the opportunity "to engage in those acts with the minor child on more than one occasion, his intent and preparation, his plans and knowledge." Further, the state would use the evidence to show "the minor child is going to identify him, not once, not twice, but three times as the person who assaulted her from a very young age and coerced her or forced her to perform those sexual acts." The state's counsel believed the evidence would be proper under La.Code Evid. arts. 404(B) and 412.2.

The state's counsel explained the victim's HOH interview addressed the first incident at her grandmother's home in Breaux Bridge when she was five years old. The second incident occurred during the three-year period stated in the bill of information. The state argued the defendant had the victim perform the same act on both occasions.

In contrast, the trial court noted the charged offense related only to one act alleged to have occurred during the time frame stated in the indictment. The defendant argued one alleged incident in Breaux Bridge occurred prior to the charged offense, and another alleged incident in Breaux Bridge occurred after it. Thus, the defendant argued the trial court should have excluded any reference to those acts. Because the HOH interview contained the victim's comments about all three of the alleged acts, the defendant argued the video should be redacted.

The trial court noted the three acts all concerned "the same victim and the same type of behavior." Thus, it had "a very strong probative value for the jury to hear it." The trial court felt whether the other acts were before or after the charged

11

offense was not relevant; relevance was found in "things like motive and opportunity and lack of mistake and identity." The trial court found all three incidents involved "a very young child" and "the same type of behavior alleged." Thus, evidence of the other incidents fell "within the parameters of [La.Code Evid. arts.] 404 and 412[,]" and the probative value outweighed the prejudicial effect of the evidence and was admissible.

We find no error in the trial court's application of the law or determination that the tape was admissible. Further, we find the information on the tape was, at worst, merely cumulative. At the time the video was played, the jury had already heard details about the two incidents in Breaux Bridge from the very first witness, Lieutenant Cormier. He told the jury the defendant had charges pending as a result of those incidents, which he described in detail. The defendant never objected to any of that testimony.

The defendant also argues the HOH video contained the victim's reference to the defendant's crimes with others. At approximately 9:25:18 in the video, the victim told the HOH interviewer the defendant "was not allowed to drive the truck because the uncle would not let him have the truck because this was not the first time – it was said he was doing the same to other kids." The defendant claims this was impermissible evidence of other crimes.

Louisiana Code of Criminal Procedure Article 841 requires a party to lodge a contemporaneous objection to a perceived error at trial. The defendant did not object to the admissibility of these statements in the video, and in fact agreed the tape should be played until the 9:45:10 mark. The defendant failed to preserve this argument for appellate review.

12

## ASSIGNMENT OF ERROR NUMBER THREE

The defendant argues his sentence constitutes cruel and unusual punishment and is constitutionally excessive. However, in Assignment of Error Number Four below, we find the defendant's sentence must be vacated because the trial court failed to observe a mandatory delay. Accordingly, we will not address this assignment of error.

## ASSIGNMENT OF ERROR NUMBER FOUR

The defendant contends the trial court erred by sentencing him immediately after it denied his "Motion for Post-Verdict Judgment of Acquittal; Alternatively, Motion for New Trial" without obtaining his valid waiver of the sentencing delays. The trial court heard and denied the motion on December 11, 2018, and immediately proceeded to sentencing, noting it had previously ordered a pre-sentence investigation and had deferred sentencing until it was received. The defendant stated no objection.

Louisiana Code of Criminal Procedure Article 873 provides:

> If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

The Louisiana Supreme Court addressed this issue in *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, *cert. denied*, __ U.S. __, 138 S.Ct. 1175 (2018). The *Kisack* trial court imposed the maximum sentence of life imprisonment after finding the defendant guilty of possessing a contraband cell phone in the Orleans Parish Prison and adjudicating him a fourth felony offender.

At the hearing of a motion for new trial, the trial court denied the motion and immediately proceeded with sentencing the defendant. The fourth circuit found

13

the defendant's counsel's participation and argument at the sentencing hearing implicitly waived the statutory delay. The supreme court, however, vacated the habitual offender adjudication that immediately followed the trial court's failure to observe the statutory sentencing delay and remanded the matter to the trial court.

The supreme court held "[a]n implicit waiver . . . runs afoul of the plain language of Art. 873 that requires that the waiver be expressly made." *Id.* at 1205. Nevertheless, it also found a trial court's failure to observe the statutory sentencing delay "may still be found harmless." *Id.* at 1206. The court found it "difficult to conclude the error is harmless" because the defendant was sentenced to the maximum term for a fourth-felony offender of life imprisonment for possession of a contraband cell phone. *Id.* The court vacated the habitual offender adjudication "that immediately followed the failure to observe the statutory sentencing delay" and remanded the matter to the trial court. *Id.*

This court recently followed *Kisack* and discussed the history of this issue in *State v. Charles*, 18-222, pp. 4-8 (La.App. 3 Cir. 5/1/19), 270 So.3d 859, 836-66 (second and third alteration in original) (footnote omitted) noting:

> The state supreme court has ruled that [the delay required by La.Code Crim.P. art. 873] may not be implicitly waived but must be explicitly waived on the record. *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, *cert. denied*, ___ U.S. ___, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018).
>
> The trial transcript and court minutes do not reflect any express waiver of Defendant's right to delay sentencing. Defense counsel did not object to the trial court proceeding with sentencing immediately after denying the motion for new trial and participated in the sentencing hearing by calling a witness, Defendant's father, on Defendant's behalf. But our courts have held that such failure to object and participation do not comply with the statutory requirement of an express waiver. *See State v. Kelly*, 375 So.2d 1344 (La.1979). In *State v. Williams*, 96-37 (La.App. 3 Cir. 6/26/96), 677 So.2d 692, this court, relying on *State v. Augustine*, 555 So.2d 1331 (La.1990), recognized the failure to follow the mandatory delays for sentencing provided in La.Code Crim. P. art. 873 as an *error patent*. We held there that when a defendant challenges the sentence imposed

14

"*Augustine* mandates a remand." *Id.* at 699. In *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, *cert. denied*, ___ U.S. ___, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018), the state supreme court reversed the appellate court's finding an implicit waiver and expressly held that "[a]n implicit waiver . . . runs afoul of the plain language of [La.C.Cr.P. a]rt. 873 that requires that the waiver be expressly made." *Id.* at 1205.

In *Augustine*, 555 So.2d at 1333-34 (La.1990) (emphasis added) (alteration in original) (footnote omitted)[,] the supreme court held that the delay provisions of La.CodeCrim.P. art. 873 are *mandatory and any sentence imposed in violation of these delay periods is null*:

> The last issue before us concerns the mandatory delays specified in La.C.Cr.P. art. 873 which must be observed before sentence can be imposed. Art. 873 first provides for a three-day delay between conviction of the defendant and sentencing. (The original provision provided for a 24-hour delay. That was amended to three days in the 1966 Code of Criminal Procedure. 1966 La. Acts No. 310, § 1). The second requires a 24-hour delay between the denial of a new trial or judgment for acquittal and sentencing. These statutorily mandated delays have been respected in a long line of opinions. *State v. Mistich*, 186 La. 174, 171 So. 841 (1937)[,] called a sentence "premature and therefore void," because the sentence was imposed within the then 24-hour delay required between conviction and sentence. In *State v. George*, 218 La. 18, 48 So.2d 265 (1950), cert. denied, 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684 (1951), the Court also addressed that same 24-hour delay, and found that "if [defendant] is denied the right to this delay, any sentence so imposed is void."

> More recent decisions of this Court include a per curiam opinion in *State v. Hampton*, 274 So.2d 383 (La.1973), and a pair of decisions authored by Justice Marcus, *State v. Young*, 337 So.2d 1196 (La.1976)[,] and *State v. Hutto*, 349 So.2d 318 (La.1977). These cases all involved a violation of the delay between denial of a new trial motion and sentencing. In *Hutto* and *Young*, the Court found that the sentence was "illegally imposed" when, just as in this case under review, both of those defendants were sentenced within 24 hours after denial of new trial motions, with neither having waived the delay. These are only a few of such decisions by this Court holding that violation of art. 873 requires remand for resentencing.

> "Article 873 uses mandatory language in requiring that twenty-four hours elapse between the overruling of a

15

motion for new trial and sentencing when the defendant is convicted of a felony. . . . The legislature in effect has said that a failure to comply with article 873 in the absence of an express waiver by the defendant affects substantial rights."

*State v. White*, 483 So.2d 1005 (La.1986), Dennis, J., dissenting in part.

Only the majority opinion in *State v. White*, 404 So.2d 1202 (La.1981)[,] can possibly be considered at variance with this rule. But even that case is largely distinguishable from this one. We held in *White* (over the protest of two dissenting justices) that the statutory mandate of the 24-hour delay was not so imperative as to require a resentencing where the defendant could not show that he suffered prejudice from the violation. *State v. White*, however, was before us on an errors patent review (no assignments of error urged by the defendant on this issue), and the defendant was not challenging the penalty imposed.

In the case before us, Augustine did not expressly waive the delay as required by art. 873 (nor did he plead guilty); and he *does* challenge the penalty on this appeal.

Furthermore, there is no assurance that this is a "useless formality for reimposition of sentence," as was the majority's conclusion in *White*. For all we know, a reimposition might result in a sentence less than 40 years for this man, who was 18 years old at the time of the offense, who robbed his victim with a racing starter's pistol, and who did not have any prior convictions at the time of the offense.

The fact that defendant Augustine has already served 18 of his 40 years before the appeal was reviewed is no reason to deny him the treatment afforded the defendants Hutto, Young, Hampton, Scott, George, Mistich and others (citations to these cases above), who were ordered resentenced *shortly* after conviction.

***The suggestion that the defendant was not harmed because his sentence was in fact not unconstitutionally excessive is not meritorious.*** Constitutional excessiveness of sentence and illegal imposition of sentence are quite separate and distinct matters. ***A sentence illegally imposed, even one not constitutionally excessive, is null, and constitutes no valid premise for continued incarceration.*** Furthermore, the district court (upon resentencing) is not bound by the

16

sentence previously imposed, whereas this Court is bound by a legally imposed sentence which is not unconstitutionally excessive.

Defendant expressly challenges his sentence in this appeal. In *Williams* we said:

> The first error patent involves whether there was proper delay in sentencing defendant. Defendant also claims as an assignment of error that the trial court failed to observe the twenty-four hour sentencing delay provided in La.Code Crim.P. art. 873. Defendant argues this assignment of error in his brief, but it was not formally specified as an error in the trial court in accordance with Uniform Rules-Courts of Appeal, Rule 1-3 and La.Code Crim.P. art. 920(1). **However, we will address this error as it is an error patent.**
>
> In *State v. Dauzat*, 590 So.2d 768, 775 (La.App. 3 Cir.1991), *writ denied*, 598 So.2d 355 (La.1992), this court stated:
>
> > La.C.Cr.P. art. 873 requires that there be a 24 hour delay between the denial for a motion for a new trial and the imposition of sentence. *Generally, this error, while patent*, is not reversible unless the defendant is prejudiced by the lack of a sentencing delay. *State v. Gaspard*, 441 So.2d 812, 813 (La.App. 3d Cir.1983), citing *State v. White*, 404 So.2d 1202 (La.1981). However, *the Louisiana Supreme Court's most recent pronouncement on this issue has required a strict application of Article 873, particularly where the defendant challenges the penalty imposed*. *State v. Augustine*, 555 So.2d 1331 (La.1990). Because defendant's counsel did not argue the motion for new trial, it is difficult to find any prejudice to the defendant in the trial court's failure to observe the sentencing delay in Article 873. *However, as defendant is challenging the penalty imposed, we find Augustine mandates a remand.*
>
> In the present case, defendant filed a motion for new trial which was denied by the trial court after a hearing on September 15, 1995. Immediately after denying defendant's motion, the trial court proceeded with the sentencing and sentenced defendant to twenty years at hard labor. ***Since defendant challenges the***

> *sentence on appeal, this error is not harmless*. In *State v. Augustine*, 555 So.2d 1331, 1334 (La.1990), the court held that *"[a] sentence illegally imposed, even one not constitutionally excessive, is null, and constitutes no valid premise for continued incarceration.* Furthermore, the district court (upon resentencing) is not bound by the sentence previously imposed, whereas this Court is bound by a legally imposed sentence which is not unconstitutionally excessive." Thus, we find the trial court erred by not observing the delay. The sentence should be vacated and the case remanded to the trial court for resentencing.

*Williams*, 677 So.2d at 699 (emphasis added) (alteration in original).

Here, the defendant did not expressly waive the required sentencing delay. He challenges his sentence in this appeal. Based on *Kisack* and *Charles*, we find the trial court committed reversible error by proceeding with sentencing the defendant immediately after denying his motion for post-verdict judgment of acquittal/motion for new trial. Accordingly, we hereby vacate the defendant's sentence and remand this matter to the trial court for resentencing.

## ASSIGNMENT OF ERROR NUMBER FIVE

The defendant contends his counsel's representation fell below his constitutional Sixth Amendment guarantee. The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.*

When this court considers a claim of ineffective counsel on appeal, the defendant must satisfy a two-part test. He must first show counsel's performance was deficient and next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). "[A] court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

The defendant argues counsel was ineffective for failing to object when the trial court did not observe the twenty-four-hour sentencing delay and for failing to set forth reasons the sentence was excessive in the motion to reconsider. As discussed in Assignment of Error Number Four above, we are remanding this matter to the trial court for resentencing because the twenty-four-hour delay was not observed. When the new sentence is imposed, the defendant will have another opportunity to ask the trial court to reconsider the sentence and set out specific reasons if he so chooses. The defendant cannot show any prejudice in light of this court's decision to remand.

The defendant also complains counsel was ineffective for failing to ask the trial court for a limiting instruction at the time the other crimes evidence was admitted through the HOH video. Although trial counsel did not specifically request a limiting instruction, the record shows the trial court later instructed the jury about other crimes evidence in general without specific reference to the video:

> Evidence has been presented concerning alleged other acts involving sexually assaultive behavior by the defendant. Evidence that the defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which the prior act may be considered is whether it tends to show guilty knowledge, absence of mistake or accident, intent, system, motive, identity, and/or the defendant's lustful disposition toward young girls. Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he is alleged to have committed another offense previously. Other acts are not to be considered by you as proof of the character of the defendant in order to show that he acted in conformity therewith.

19

Before the video was played at trial, the parties discussed redactions to the video. Counsel again did not request a limiting instruction to be given at that time.

The defendant further contends his counsel was ineffective for agreeing to play the HOH video until the time frame of 9:45:10 and/or failing to specifically note the reference in the video to other alleged crimes. He claims he was prejudiced by the victim's reference to incidents involving the defendant and others. As discussed in Assignment of Error Number Two above, the jury heard about those other crimes from the testimony of Lieutenant Cormier. We have determined the tape was admissible. Thus, the defendant was not prejudiced by counsel's failure to object to the introduction of evidence of other crimes through the HOH video.

The defendant argues counsel failed to object during opening statements and closing arguments when the state's counsel referred to him as a predator. He claims the term "child predator" has a statutory meaning in Louisiana, and the reference was highly prejudicial to him. The defendant has made no showing that anyone on the jury was aware of the statutory definition or the legal elements of that term. The jury heard the testimony of the victim and the other witnesses that satisfied the elements of attempted aggravated rape. The use of the term "predator" did not change any of that testimony or help to establish the required elements. This court finds the defendant has failed to show how use of the term resulted in any prejudice to him.

The defendant also alleges counsel failed to object when the state's counsel made references during his closing argument to facts "not supported by the record and went beyond the evidence, the lack of evidence, or conclusions therefrom." Specifically, the defendant claims counsel should have objected to the state's counsel's comment that he could not find Mrs. Frederick to testify at trial. The

20

state's counsel then concluded Mrs. Frederick, the defendant's sister, would not have told the victim's mother what the defendant had done if she had not believed it. He argues this was evidence that was not in the record to which counsel failed to object. Because of his counsel's failure to object to these references of the state's counsel, the defendant alleges he was denied due process of law.

The trial court instructed the jury about statements and arguments of counsel in its charge:

> Statements made by the attorneys at any time during the trial are not evidence.
>
> In the opening statements the attorneys were permitted to tell you the facts they expected to prove. In closing arguments the attorneys were permitted to present for your consideration their contentions regarding what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence.
>
> The opening statements and the closing arguments are not to be considered as evidence.

The defendant claims the comments of the state's counsel caused an undue focus on highly inflammatory matters not supported by the evidence that denied him due process. However, the defendant has not shown how he was prejudiced by these comments. The victim's testimony established what the defendant did. The jury heard details from Lieutenant Cormier and the victim in addition to the victim's mother. The jury was able to draw its own conclusions and make its own credibility determinations. The jury was able to do that absent knowledge about why Mrs. Frederick did not testify or why she might have told the victim's mother what had happened. The court advised the jury that arguments by counsel are not evidence. The defendant was not prejudiced by the state's counsel's remarks.

The record does not show any prejudice to the defendant as a result of counsel's performance as required by *Strickland*. Accordingly, this assignment of error lacks merit.

21

## CONCLUSION

The defendant's conviction is affirmed. The defendant's sentence is vacated,

and the case remanded for resentencing.


**CONVICTION AFFIRMED;**
**SENTENCE VACATED AND REMANDED.**